Argued March 2, decided March 22; rehearing denied April 26, 1910.

## BOELK *v.* NOLAN.

[107 Pac. 689.]

PLEADING—JOINING SEVERAL CAUSES IN ONE STATEMENT—MOTION TO STRIKE.

1. Under Section 106, B. & C. Comp., providing that when any pleading contains more than one cause of action, if the same be not pleaded separately, such pleading may, on motion, be stricken out, a complaint in which several causes of action are not separately stated is not demurrable.

PLEADING—INDEFINITENESS OR UNCERTAINTY—WAIVER.

2. Where the allegations of a complaint are not so repugnant as to destroy one another, but there is some indefiniteness or uncertainty, objection to the complaint is waived by defendant pleading to the merits.

CANCELLATION OF INSTRUMENTS—PARTIES.

3. Plaintiff's friend having transferred the property to a third person, it was unnecessary to make the friend a party to the action to cancel the deed to defendant, as a former trustee, who has been divested of all title and interest in the trust estate, is not a necessary party in a suit to recover the legal title.

CANCELLATION OF INSTRUMENTS—PLEADING—KNOWLEDGE OF TRUST.

4. Plaintiff left his farm in charge of a friend, who was to pay the taxes on the same and enjoy the use thereof while plaintiff was absent from the State, and surrender possession upon his return. The friend subsequently secured a tax deed to the property without the knowledge of plaintiff, and transferred the property to a third person in trust for plaintiff. Defendant thereafter secured a deed of the property from the third person, and by misrepresenting the condition of affairs to plaintiff secured a deed to the property for nominal consideration. *Held,* in an action to set aside this deed for fraud, that it was not necessary to specifically allege that defendant knew of the trust relation between plaintiff and his friend, but such knowledge would be necessarily implied from the averment that defendant falsely represented to plaintiff that the friend had failed, neglected, and refused to pay taxes upon the land; such allegation assuming the existence of knowledge by defendant of the duty of the friend to pay the taxes for plaintiff.

DEEDS—GROUNDS FOR CANCELLATION—MISREPRESENTATIONS.

5. If one, about to purchase a tract of land, willfully misstates any material fact to the owner, or by any act intentionally misleads him as to the value of the land, and thereby induces the owner to part with his property for less than its value, the contract will be set aside as a fraudulent transaction.

DEEDS—FRAUDULENT REPRESENTATIONS—MATTERS OF "FACT OR OPINION.

6. A matter of opinion may amount to an affirmation of fact, when the parties are not dealing upon equal terms, and one of them has means of information not equally open to the other.

DEEDS—EVIDENCE—FRAUD.

7. Evidence, in an action to set aside a deed as having been secured by fraudulent representations, *held* sufficient to show that the deed was so secured.

From Tillamook: GEORGE H. BURNETT, Judge.

This is a suit by Herman Boelk against Oak Nolan to set aside a deed to 160 acres of land which the plaintiff executed and delivered to the defendant (appellant), on the 7th day of October, 1907. From a decree in favor of plaintiff, the defendant appeals.          MODIFIED.

For appellant there was a brief and an oral argument by *Mr. Oak Nolan in proprio personae.*

For respondent there was a brief over the names of *Mr. H. T. Botts* and *Mr. Ralph R. Duniway* with an oral argument by *Mr. Duniway.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. Defendant has appealed from a decree canceling for fraud a deed executed by plaintiff at Vina, California, on October 8, 1907, purporting to convey to defendant 160 acres of land in Tillamook County, for the consideration of $25, and requiring defendant to reconvey the land to plaintiff. A demurrer was interposed to the complaint on the grounds that (1) it contains several causes of suit not separately stated; and (2) it does not state facts sufficient to constitute a cause of suit. The first of these challenges to the complaint is not that several causes of action have been improperly joined, which is a good ground for demurrer (Section 68, subd. 5, B. & C. Comp.) but that several causes of action, contained in the complaint, have not been severally stated, the remedy for which is by motion to strike out the pleading. Section 106, B. & C. Comp.) ; *Bade* v. *Hibberd,* 50 Or. 504 (93 Pac. 364) *; Oregon* v. *Portland Gen. Electric Co.,* 52 Or. 502, 513 (95 Pac. 722: 98 Pac. 160).

2. Referring to the second challenge presented by the demurrer, it is urged that the complaint contains allegations inconsistent to such an extent that one destroys the other. The complaint is not artistically drawn, contain-

ing much that is purely evidentiary in character; nor is it altogether consistent in its averments. The allegations thereof are not so utterly repugnant as to destroy one another, so that no cause of actions remain; but the most that can fairly be said in criticism thereof is that there is some indefiniteness or uncertainty, but whatever there is of that character, it was waived by the defendant by pleading over to the merits. It is specially urged, however, that there is no averment that at the time of defendant's alleged false representations to plaintiff, as to the claim of ownership by one Frank Ekroth, and procurement of the execution of the deed, he (defendant) knew of the existence of any trust relationship between plaintiff and Ekroth, in whose possession plaintiff had left the land, giving him the right to its use and enjoyment, with the duty imposed upon him to pay the taxes thereon, but who permitted it to be sold for delinquent taxes, and purchased it himself. While there is no express averment of the fact of knowledge by the defendant of such relationship, if such is necessary to a statement of a cause of action, it is necessarily implied in the averment that the defendant falsely represented to plaintiff that Ekroth had failed, neglected, and refused to pay the taxes upon the land, because it assumes the existence of knowledge by the defendant of the duty upon Ekroth to pay.

3. Neither was it necessary, as claimed by defendant, that Ekroth should be made a party defendant in this suit, to enable plaintiff to recover whatever title was acquired by Ekroth in buying in the property at a tax sale, and accepting and receiving a sheriff's deed; for it appears from the answer that Ekroth afterwards conveyed the land to one Harrison, who took it subject to Ekroth's equitable obligation to restore the land and title thereof to plaintiff. When a former trustee has been divested of all title and interest in a trust estate,

he is not a necessary party in a suit to recover the legal title: *Hubbell* v. *Hubbell*, 22 Ohio St. 208; *Ryan* v. *O'Connor*, 41 Ohio St. 368.

4. Passing to the merits of the case, the facts, as we gather them from the record, are that, prior to the year 1899, the plaintiff, who is a German of very limited education, not readily comprehending the significance of written or spoken English, had entered the land in controversy under the homestead law of the United States, completed his term of residence thereon, made final proof, and had received his duplicate receipt, but had not then obtained a patent; that in April of that year, desiring to go to the State of California for the benefit of his health, he delivered possession of the land to Ekroth, his friend and neighbor, who owned adjoining land, on condition that Ekroth should pay the taxes thereon, enjoy the use thereof, and surrender possession to plaintiff at any time he should return and demand the same. Ekroth took possession on those conditions, and plaintiff departed for the State of California, where he remained about nine years before returning to the vicinity of the land. Ekroth occupied and enjoyed the use and profits of the land, paying the taxes thereon, until the year 1901, when, because he was unable to ascertain plaintiff's whereabouts, and had been informed he was dead, he allowed the taxes to become delinquent, and, for the purpose of holding the title in trust, either for plaintiff if he should return and demand the same, or for the heirs of plaintiff, if he were dead, he (Ekroth) bought the land on December 27, 1902, at a tax sale, and on December 12, 1907, receiving a sheriff's deed therefor. On April 26, 1906, Ekroth and one Thomas F. Harrison jointly executed an instrument in the form of a deed, which purported to convey to the latter all of the interest of the former in this land and in Ekroth's land adjoining, but with a reservation as to the land in controversy, that at any time during

the lifetime of Ekroth, upon 90 days' notice from him, Harrison was to surrender the land to Ekroth, but at the death of Ekroth, Harrison was to take and hold the legal title thereto, holding the same in trust for plaintiff or his heirs. The expressed consideration for this agreement, upon the part of Harrison, is his covenant to keep and maintain Ekroth during the latter's lifetime, and for the payment to him of an annuity of $150, with provisions for a forfeiture for breach of any condition by Harrison. On April 4, 1907, Ekroth began a suit in equity against Harrison for the purpose of making a lease of the instrument in question, alleging that he (Ekroth) was the owner of the premises described therein, including the land involved herein, and that he had been induced by the fraud and deceit of Harrison to execute the instrument, which was set forth in full in the pleading, and which purported to be a conveyance of the legal title to Harrison, but which, in fact, was intended as a lease, and asking that it be so reformed. And on October 3, 1907, an action at law was also begun by Ekroth against Harrison, to recover the possession of the land here involved, with other lands, alleging that he was the owner in fee simple, and entitled to the possession thereof. On October 11th Harrison filed his answer to the complaint in ejectment, in which he disclaimed having possession, or any right to possession, of the Boelk land, and alleging that he had surrendered the possession upon a previous notice, given in accordance with the terms of the original conveyance.

From the time of Boelk's departure from this State to the State of California, in April, 1899, continuously until October 8, 1907, he had remained away from Tillamook County, and had had no knowledge of any of the transactions concerning the land above noted. Defendant, after extensive inquiry, ascertained that plaintiff was residing near Vina, in the State of California, and went

there to see him, meeting him near that place on October 8, 1907. He then represented to him that Ekroth had lost all of his own property, and had claimed to own plaintiff's property; that against the latter there was a tax title; that Ekroth had bid it in, and had made some kind of a conveyance to one of the Harrisons, who claimed to own the land by deed from Ekroth; that there were two suits pending in the circuit court of Tillamook County involving the title to this land; that the title to the land was much involved and doubful, and was probably lost to the plaintiff: and that he (defendant) had the Harrison deed, and wanted to get a good title to the land. He then importuned plaintiff to execute a deed, conveying to him the land for the nominal sum of $25; whereas, the facts, as shown by the evidence, indicate that the land, and plaintiff's interest therein, was then worth the sum of not less than $2,500. We have no doubt from the evidence that, although defendant may not have told plaintiff that the latter had lost his title to the land, which he denies having done, yet the evidence plainly shows that he caused plaintiff to believe that, if he had any interest in the land, it was of a very doubtful character, and that if he could recover the title at all, he could do so only after expensive litigation and great trouble. Plaintiff was then ignorant of the true state of the title, and did not know that Ekroth's conveyance to Harrison did not, in fact, convey the legal title, or that if it did, Harrison was to hold the land in trust for plaintiff, by the expressed words of the conveyance itself. But he relied upon and believed the representations of defendant, and, yielding to defendant's importunities, executed and delivered the deed. Defendant, before going to California to see plaintiff, had examined the title to the land, so far is it was a matter of record, had looked over the pleadings in the first suit brought by Ekroth against Harrison, and must necessarily have seen the terms of

the conditional conveyance from Ekroth to Harrison.
Being a lawyer, he knew the legal effect of the recitals of
that conveyance, and the nature of the issues made by
the pleadings, and he must have known that Harrison
was not claiming to own the property as against Boelk,
and that the title was not seriously or at all involved; for
on October 11th, three days after the execution of the
deed, Harrison filed his answer to the action in eject-
ment, disclaiming any right to the land or to its posses-
sion. It is true, as claimed by defendant, that Ekroth
had made declarations that he was the owner in fee
of this land; but, in view of his expressed reservation
in his conveyance to Harrison of the trust in favor of
Boelk, such previous declarations must be understood
and construed to have been made by him as meaning that
he claimed to have only the legal title burdened with such
trust relation in favor of Boelk, and that defendant, hav-
ing knowledge of the terms of the Harrison conveyance,
must have so understood.

5. If one, about to purchase a tract of land, willfully
misstates any material fact to the owner, or by any act
intentionally misleads him in regard to the value of the
land, and through such misrepresentations succeeds in
inducing the owner to part with his property for less than
its value, a court of equity will relieve him, and set aside
the contract thus made as a fraudulent transaction:
*Caples* v. *Steel,* 7 Or. 491. These parties were not deal-
ing upon an equal footing. Defendant lives in the vicin-
ity of the land, and is a lawyer of considerable learning
and experience, and, to some extent at least, before seek-
ing out plaintiff, had examined the title; knew the char-
acter of the conveyance from Ekroth to Harrison, and
the trust relationship of the former to the plaintiff, and
the extent to which the title and right of possession to
this land was involved in the suit pending between Ekroth
and Harrison. On the other hand, plaintiff had been

away from the vicinity of the land, and in another state, for about nine years, was altogether ignorant of the condition of the title, and could not readily have acquired information of its true state or condition. And, in view of the special knowledge defendant had, and assumed to have, concerning the title, which he undertook to relate to the plaintiff, negligence cannot be attributed to plaintiff in relying upon defendant's statement, and not making further inquiry. The latter insists that he did not tell plaintiff his title was gone, but it appears from his own testimony, on cross-examination, that when he told plaintiff that he wanted to buy the land, plaintiff said something about the transaction with Harrison, to the effect that defendant, if he wished to get a title, could obtain a deed from Harrison, or asked why he did not do so. Defendant was then asked, "Why didn't you say why you didn't?" to which defendant answered: "I told him I might have to get it out of this litigation." And then, "Didn't you tell him you wanted an extra good title, and wanted his deed to supplement the Harrison deed?" "I told him I had the Harrison deed and wanted to get title to the land, and couldn't get a good title without getting deed from him." At another stage of the cross-examination he was asked, "Didn't you also tell him this title was badly mixed up, and his title was gone?" "Yes, sir; I told him there was a lot of things mixed up in connection with it, and I wanted to clean it up and get a clear title." From this testimony of the defendant it is impossible to avoid the conclusion that defendant induced plaintiff to believe that he had little or no right left by which he might recover the land, and thereby defendant greatly depreciated in plaintiff's mind the value of his interest, and induced him to part with it for the nominal consideration of $25; whereas the truth was that no one was seriously, or at all, claiming any right against plaintiff—all of which defendant well knew, or should have known.

6. Again, it is urged by defendant that what he said to plaintiff was simply an opinion, on which plaintiff was not entitled to rely. But the defendant's declarations amount to more than an opinion; he volunteered to advise plaintiff of the facts concerning the condition of the title, but stopped short of telling all of the facts, particularly in failing to state Ekroth's reservation of title for plaintiff's benefit, in his conveyance to Harrison, and in saying to plaintiff, in reference to the Harrison deed, that "it was some sort of a conveyance," thereby plainly inducing plaintiff to believe that it was an absolute conveyance. A matter of opinion may amount to an affirmation of fact, when the parties are not dealing upon equal terms, and one of them has, or is presumed to have means of information not equally open to the other: *Grim* v. *Byrd,* 32 Grat. (Va.) 293; *Rorer Iron Co.* v. *Trout,* 83 Va. 397 (2 S. E. 713: 5 Am. St. Rep. 285).

"An expression of opinion may be so blended with statements of fact as to become itself a statement of fact. Where one of the parties has superior knowledge on the subject, his expression of an opinion, which he knows he does not entertain because it is contrary to the facts, may be actionable if made for the purpose of inducing another to act upon it, which he does to his injury; or it may amount to an implied assertion that he knows facts which justify his opinion, and thus his statement may become actionable as a false statement of fact." 20 Cyc. 18.

7. It was the duty of defendant, when he undertook to inform plaintiff about the condition of the latter's title to the land, to make a full, truthful, and complete declaration of all the conditions, within his knowledge, affecting it; and his failure so to do amounts to such a fraud as entitles plaintiff to a cancellation of his deed.

After having secured the deed from plaintiff, defendant returned to the vicinity of the land and procured from Harrison, for a nominal consideration, a quitclaim deed. Of course this was taken by defendant with

knowledge of the extent of Harrison's title, and the burdens imposed upon it because of the recitals of that character in Ekroth's conveyance to Harrison.

For the purpose of clearing the record title the lower court, by its decree, properly required defendant· to execute a conveyance to plaintiff, but omitted to direct the payment to defendant of the sum of $30, offered and tendered into court by plaintiff, for the use and benefit of the defendant in restoring him to his former position. This omission was doubtless a mere oversight that would have been corrected had the trial court's attention been called to the matter, which does not appear to have been done.

The decree, therefore, will be modified so as to direct the clerk of the lower court to pay the amount so tendered to the defendant. Otherwise the decree will be affirmed, with an order directing the delivery to the plaintiff of the defendant's deed, executed and filed with the court at the time of his appeal, as a condition for the stay of execution. The plaintiff will be awarded costs in this court.                                        MODIFIED.