Argued March 1, affirmed March 21, 1916.

# ALLEN v. McNEELAN.*

(156 Pac. 274.)

**Fraud—False Representations as to Value.**

1. On an exchange of farm land for city property, defendant's statement as to the value of his property was not fraud upon which an action for deceit could be predicated where he did not attempt to prevent plaintiffs from making a full investigation; and they did examine the property, since, to amount to fraud, representations as to value must be coupled with some untrue or misleading statement of fact used to reinforce the opinion, and the person alleged to have been defrauded must be thereby induced to forego further inquiry as to the worth of the property.

**Fraud—False Representations as to Value—Failure to Exercise Care.**

2. At the time plaintiff exchanged farm lands for property in Portland he knew people in Portland other than defendant, and after the trade was made and he became dissatisfied he had different real estate men look at the property, and ascertained that it could not be sold for the amount of encumbrances against it. He claimed that defendant misrepresented its value. *Held* that, as all the avenues of inquiry which he afterward pursued were open to him as well before the exchange as afterward, the court did not err in granting a new trial on the ground that plaintiff did not exercise ordinary care for his own protection.

**Release—"Consideration"—Necessity of Benefit to Releasor.**

3. Plaintiff claimed that he was induced to exchange farm land for city property owned by defendant by defendant's misrepresentation of the value of the property. Real estate agents employed by him to find a purchaser for his land had promised that they would procure him a loan on the city property after the exchange was made. They were unable to do this, and agreed to return a note held by them and pay plaintiff $250 in settlement of his claim against them for damages. They returned the note and paid him $25, but claimed they were unable to meet the remainder of their obligation, and stated they would endeavor to get defendant to pay part of it. Defendant was interviewed and promised to pay $300 if plaintiffs would release him from all claims or causes of action arising out of the exchange, and plaintiff accordingly executed a release to defendant and the real estate agents and received the promised payment; the money being furnished by the agents and afterward repaid by defendant. *Held* that, though plaintiff received no more than what the agents had already agreed to pay him, there was nevertheless a consideration for the release of defendant, consisting of defendant's payment of a part of the debt of the real estate agents, since, to constitute a "consideration" for a contract or promise, it

---

*On the right to rely on representations as to value, see note in 37 L. R. A. 605.

On statements as to value as a fraud, see note in 35 L. R. A. 418, 436.                                                                REPORTER.

is not absolutely necessary that a benefit should accrue to the person making the promise, and it is sufficient that something valuable flows from the person to whom it is made, and that the promise is the inducement to the transaction.

[As to liability of vendor of real estate for false representations innocently made, see note in Ann. Cas. 1913C, 73.]

From Multnomah: JAMES W. HAMILTON, Judge.

Department 1.   Statement by MR. JUSTICE BURNETT.

The plaintiffs, James W. Allen and Olive G. Allen, husband and wife, allege themselves to be owners in fee simple of a Polk County farm, which they say was worth $16,000 and was mortgaged for $8,000.   The defendant owned property in Portland subject to city improvement liens approximating $1,000.   They aver that about November 29, 1912, the defendant, C. H. McNeelan, proposed to exchange his Portland holdings for the Polk County farm, encumbered as it was, on condition that they would give back to him a first mortgage on the Portland premises for $8,500.   The charge of fraud made by the plaintiffs against the defendant and upon which they count for recovery is contained in this allegation of the complaint:

"That prior to and on said 29th day of November, 1912, defendant offered and proposed to exchange his said property for the property hereinabove described as belonging to plaintiffs, upon the following terms and conditions, to wit: That in exchange for his said property defendant would receive a conveyance of plaintiffs' said property subject to the above-described encumbrance of $8,000, plaintiffs, however, upon the conveyance to them of defendant's property, to execute and deliver back to defendant a first mortgage on said premises in the sum of $8,500; that for the purpose and with the intent of inducing plaintiffs to exchange their said property for the property of defendant on the above basis defendant represented to plaintiffs that his said property was worth the sum of

$18,000, and that the market value thereof was the sum of $18,000, and that said property could be quickly sold for the sum of $16,000, or that a second mortgage could be placed thereon for the sum of $4,000 after giving the defendant a first mortgage in the sum of $8,500; that the said representations were made with the intent and for the purpose and with the expectation of inducing plaintiffs to exchange their said property for the said property of defendant, and were made as representations of fact, and not merely the opinion of defendant as to the value of the said property.''

They further say that they were ignorant of real estate values in Portland, and that the defendant knew at the time he made them that his representations on that subject were false, and that the real worth of his premises did not exceed the sum of $9,500. By the alleged fraud the plaintiffs claim they were damaged in the sum of $8,000. The answer denies that the wife was the owner of any title in the Polk County farm, and fixed the value of the equity of redemption therein at $4,000.

Affirmatively answering, the defendant avers, in substance, that through their agent the plaintiffs applied to the defendant for an exchange of the properties described in the complaint, and that they both examined his property, had full and ample opportunity to obtain, and did secure, complete information about the value of what he offered. He denies all the allegations of fraud, imputes to the plaintiffs the initiation of the negotiations, and alleges that they made the exchange on their own judgment after their examination as stated. A further defense is to the effect that after the trade had been made the plaintiffs became dissatisfied, and that thereupon, for a valuable consideration, the plaintiff James E. Allen released the defendant from any right, claim, action or cause of action grow-

ing out of the transaction in question, and that he accepted the consideration in full payment and satisfaction of such demand, it being the identical claim set forth in the complaint.     After certain denials the reply alleges, in substance, that the release pleaded in the answer was given without any consideration.     A jury trial resulted in a general verdict in favor of the plaintiffs assessing their damages at $2,000.     Afterward, on motion of the defendant, the court set aside the judgment rendered on this verdict and granted a new trial.     From the order made in this behalf, the plaintiffs appeal.                                    AFFIRMED.

For appellants there was a brief over the name of *Messrs. Conley & De Neffe,* with an oral argument by *Mr. J. L. Conley.*

For respondent there was a brief over the names of *Messrs. Wood, Montague & Hunt* and *Mr. Prescott W. Cookingham,* with oral arguments by *Mr. Richard W. Montague* and *Mr. Cookingham.*

MR. JUSTICE BURNETT delivered the opinion of the court.

The grounds upon which the Circuit Court based its ruling were: (1) That the representations made by the defendant to the plaintiffs in the exchange of properties were merely the owner's estimate of value, and not recitals of fact; (2) that the plaintiffs did not rely upon said statements, but upon their own judgment; (3) that plaintiffs did not exercise ordinary care for their own protection; and (4) that the release executed by the plaintiff James E. Allen discharged the defendant from whatever liability there may have been in the premises.

1, 2. Aside from his alleged declaration about the

value of his property, there is no charge against the defendant upon which deceit could be predicated.   There are many cases, some of which have been cited by the plaintiffs, such as *Olston* v. *Oregon-W. P. & Ry. Co.,* 52 Or. 343 (96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 915), and *Boelk* v. *Nolan,* 56 Or. 229 (107 Pac. 689), which teach that under certain circumstances an expression of opinion may become the statement of a fact. In all such instances an examination of the record will disclose that the representations of value have been invariably coupled with disingenuous statements of facts as a basis for the opinion advanced.   The general principle is that expressions of opinion respecting the value of one's property do not amount to fraud. The doctrine is thus stated in *People* v. *Peckens,* 153 N. Y. 576 (47 N. E. 883), cited by the plaintiffs:

"As a general rule, the mere expression of an opinion which is understood to be only an opinion does not render a person expressing it liable for fraud.   But, where the statements are as to value or quality, and are made by a person knowing them to be untrue, with an intent to deceive and mislead the one to whom they are made, and he is thus induced to forbear making inquiries which he otherwise would, they may amount to an affirmation of fact rendering him liable therefor. In such a case, whether a representation is an expression of an opinion or an affirmation of a fact is a question for the jury.   The rule that no one is liable for an expression of an opinion is applicable only when the opinion stands by itself as a distinct thing."

In the instant case there is no evidence tending to show that the defendant knew his expressions about the value of his property to be untrue.   Neither is there any showing that they prevented the plaintiffs from investigating that matter.   Want of these characteristics take this contention out of the rule an-

nounced by Mr. Justice MARTIN in *People* v. *Peckens.*
Without dispute the testimony shows that the plain-
tiffs fixed a value upon their farm, and that the defend-
ant did the like as to his property.   Nothing whatever
is shown against the defendant whereby he at-
tempted to prevent the plaintiffs from making a full
investigation in every respect.   Moreover, it is dis-
closed by the record that the husband made a particu-
lar examination of the dwelling-house on the defend-
ant's realty, and that they both looked at the premises
from the outside and considered its locality.   This
clearly disputes their contention that they relied solely
upon the defendant's representation as to value.   The
rule seems to be that in order to amount to fraud, a
representation as to value must be coupled with some
untrue or misleading statement of fact used to re-
inforce the opinion, and not only so, but, further, that
the person alleged to have been defrauded must have
been thereby induced to forego further inquiry as to
the worth of what he would acquire.   The husband
plaintiff admits that he knew other people in Portland,
and that after the trade was made and he became dis-
satisfied he got different real estate men to look at the
house and lots he had purchased, and then ascertained
that they could not be sold for the amount of the en-
cumbrances then against them, including the mortgage
he himself had given.   The testimony shows that he
met the defendant in Portland when brought to him by
the plaintiffs' agent for the sale of his land.   Together
they examined the defendant's premises.   At the in-
stance of the plaintiff husband, the defendant went to
Polk County next day and looked over the farm, and
within four days from the time they first met the trade
was consummated.   All the avenues of inquiry which
he afterward pursued were open to him as well before

the passing of the deeds or the execution of the contract as afterward; so that the reason assigned by the court to the effect that the plaintiffs did not exercise ordinary care for their own protection is amply sup-. ported by the record.

3. The attack upon the alleged release was on the ground that it was without consideration. The husband plaintiff does not pretend but that he knew its contents and its purpose. No imputation of fraud in connection with that instrument is either alleged or attempted to be proved. His statement respecting the document is, in substance, as follows: The firm of real estate agents which he had employed to find a purchaser for his land had promised him that after the exchange was made they would procure for him an additional loan of $4,000 upon the Portland holding. This they were unable to accomplish; and as a settlement of plaintiffs' claim against the firm for damages the latter agreed to return him his $250 note and an additional $250 cash which they had received from him as broker's fees. They returned the note and gave their check for $25. Afterward they claimed they could not then meet the remainder of their compromise obligation, but said they would endeavor to get the defendant to pay some of it. They accordingly interviewed him, and he promised to pay $300, provided the plaintiffs would also release him from all claim or cause of action arising out of the exchange. The plaintiff James E. Allen accordingly executed the paper in question, and upon the defendant's agreement to reimburse it the firm advanced the necessary money, which in a day or two afterward the defendant repaid. Allen executed the two releases on the same day, one to the real estate firm and the other to the defendant.

It is unnecessary to consider the effect of this feature upon the plaintiff wife, because the case must be affirmed as to her on the ground of the insufficiency of the charge or evidence of fraud. It is without dispute that the defendant paid his money for the discharge which he pleads. The plaintiffs argue that, as the brokers had already agreed to pay the full $500 in the manner noted, it would not constitute a consideration for a release to the defendant. It is indeed well settled that their agreement to perform an obligation they had previously assumed would not support any additional contract on their part; but that is not this case. Here is a payment by the defendant of part of the debt of the firm, and it is sufficient to sustain the acquittance of himself.

"To constitute a consideration for a contract or promise it is not absolutely necessary that a benefit should accrue to the person making the promise. It is sufficient that something valuable flows from the person to whom it is made, and that the promise is the inducement to the transaction": 2 Words and Phrases, p. 1446; 1 Words and Phrases, Second Series, p. 903.

While it is true that the plaintiff executing the instrument obtained no greater benefit than the firm of brokers had promised him, yet it is without controversy that the defendant paid his $300 named in his release for the very purpose of obtaining his discharge; and, while the plaintiff Allen gained no more than what had been pledged to him by the real estate agents, yet, as the defendant had parted with actual value, it validated the contract as to him. The release being unquestionably effective as to James E. Allen, a verdict in favor of both him and his wife would in any event be contrary to the admitted effect of the evidence which would vitiate the judgment at

least to that extent.  The Circuit Court was right in awarding a new trial.

Its judgment is affirmed.        AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE McBRIDE and MR. JUSTICE BENSON concur.