Argued September 18, reversed and remanded October 15, 1918.

# McCABE *v.* KELLEHER.*

(175 Pac. 608.)

**Fraud—Waiver—Performance After Discovery of Fraud.**

1. Where one who has been induced through fraud to enter into contract discovers the fraud while contract is wholly executory, he waives the fraud by wholly or partly performing the contract.

**Fraud—Part Performance of Contract—Waiver.**

2. But he does not waive the fraud by partly performing the contract before discovering the fraud.

**Fraud—Election of Remedies.**

3. A person who has been induced through fraud to enter into contract and partly performs his part of contract before discovering fraud may keep what he has acquired by the contract and sue for damages, or may rescind contract absolutely and sue in action at law to recover consideration, or may sue in equity to rescind contract and obtain full relief in such action.

**Fraud—Actions—Rescissions of Contract.**

4. Where a person who has been induced to enter into a contract through fraud, elects to retain what he has received and bring an action at law to recover the damages sustained, he is not required to rescind the contract.

**Vendor and Purchaser—Rescission—Fraud—Payments With Knowledge of Fraud.**

5. Payments of purchase-money installments with knowledge of the fraud inducing the contract of purchase amount to ratification defeating complete rescission.

**Fraud—Action for Damages.**

6. Grantees who were induced through fraud to purchase property, instead of rescinding transaction upon discovery of fraud, could keep the property and sue for damages.

**Vendor and Purchaser — Sale of Land — Payment With Notice of Fraud—Estoppel.**

7. Where grantees who were induced through fraud to purchase property made payments upon notes given grantor after discovery of fraud, estoppel did not result, where such payments did not cause grantor to change his position to his injury.

**Fraud—Payments With Notice of Fraud—Waiver.**

8. Grantees who purchased property because of fraudulent representations did not, by making payments on notes given for part of

---

*The question of waiver of fraud by completing executory contract for sale of personal property after discovering the fraud is discussed in note in 8 **L. R. A. (N. S.)** 452.               Reporter.

purchase price after discovery of fraud, waive their right to sue grantor for damages.

**Fraud — Conveyance — Evidence — Payments Made With Notice of Fraud.**

9. In grantees' action against grantor for damages for fraudulent representations, evidence of payments on notes made by grantees after discovery of fraud may have some value on question of whether grantees were really deceived, or whether their grievance is a mere afterthought growing out of dissatisfaction.

**Fraud—Misrepresentation—Opinions—Dealer's Talk.**

10. Representations as to value of land and assertions in commendation of land commonly called "dealer's talk" are mere expressions of opinion and not actionable fraud.

> [As to representations by vendor in respect to value of property, see notes in 15 **Am. Rep.** 382; 18 **Am. St. Rep.** 556.]

**Trial—Contradictory Instructions.**

11. Where the court charged that where vendees had lived on the land two months before taking deed or paying money, having opportunity to ascertain the nature of the soil, etc., they were bound to protect themselves from any fraud of vendor, a further instruction that defendant could not rely on such rule, if he made the fraudulent statements alleged, was contradictory, and ground for reversal.

**Appeal and Error—Harmless Error—Conflicting Instructions.**

12. Conflicting instructions are ground for reversal, because tending to confuse the jury.

From Douglas: James W. Hamilton, Judge.

Department 1.

The plaintiffs bought from the defendant an undivided half of 253 acres of land in Douglas County, paying part cash and giving their notes and mortgage on the land for the balance of the price. They have brought this action to recover damages from the defendant on account of alleged fraud on his part inducing them to purchase. They claim that they were ignorant of land values in the State of Oregon and were without any knowledge or experience concerning the nature of the soil and the value of land in Douglas County, all of which was well known to the defendant. The fraudulent representations complained of are thus narrated in the complaint:

"That in order to induce the plaintiffs to purchase an undivided one-half interest in and to the above-described real property, the defendant on or about the 14th day of October, 1914, stated and represented to the plaintiffs that there were one hundred and sixty acres of plow land in said tract upon which he could raise two tons of hay per acre, which would net him at least eight dollars per ton; that he, the defendant, had cleared from one to two thousand dollars per year from said above-described real property; that there was good pasturage for ten months in the year on that part of said land adapted exclusively to pasturage and that the said above-described land was worth the sum of seventy-five dollars per acre; that it was the finest land out of doors and would grow everything."

The alleged falsity of these statements is pointed out in detail in subsequent averments, as well as the defendant's knowledge that they were untrue, and it is stated that the plaintiffs relied upon them and were thereby induced to purchase the land.

The charges of fraud are traversed by the answer. Further pleading, the defendant gives a history of the transaction from his viewpoint and says that the plaintiff C. J. McCabe sought him with a view of purchasing the land and had ample opportunity to learn completely its condition, area of plow land, and all other matters giving rise to the grievance of the plaintiffs, prior to entering into the contract; that they resided on the premises from August 24, 1914, to October 14th of the same year, at which latter date they took the deed, paying part of the purchase price and giving the notes and mortgage mentioned. A second further and separate answer is to the effect that the defendant sold to the plaintiffs an undivided half interest in the property and leased to them the other moiety for five years, all for the consideration of $9,487.50 and the payment of the taxes on the leased portion; and

that they paid to him on account thereof $3,507.50 and "delivered their promissory notes secured by a mortgage on said real property for the remainder of the purchase price." The pleading goes on to say in substance that ever since October 14, 1914, the plaintiffs have been in possession of the property, knew all about it and its productivity and with full knowledge of all the circumstances connected with the transaction have continued to make payments on account of principal and interest of the note, whereby they "waived all claim for damages, if any they ever had, and are estopped from asserting that the contract was induced by fraud or misrepresentation." The Circuit Court sustained a general demurrer to this second further and separate answer and the defendant complains of this ruling on appeal. The remainder of the new matter in the answer was traversed by the reply in material particulars. The defendant also assigns as error the refusal of the court to give the following instructions:

"I further instruct you that the expression of an opinion is not a representation and does not amount to a fraud, although false. So, if the purchasers had an opportunity to examine the property and ascertain its value, and no fiduciary relationship existed between them and the defendant, the defendant's representation as to the value of the property, if any he made, is but the expression of an opinion and not actionable, even though false and fraudulent.

"I further instruct you that general assertions or expressions of a seller in commendation of his land and bragging upon it, commonly called 'Dealers' Talk,' do not constitute any ground for an action of deceit or fraud; such statements are generally regarded in the law as mere expressions of opinion, upon which a purchaser cannot safely rely."

He contends likewise that the court was wrong in giving an instruction numbered 9, which after recital of the charge of fraud as made in the complaint, continues with this statement:

"Now, if you find from the evidence that the defendant made such representations to the plaintiff and said representations were false, and that plaintiffs believed them to be true and relied upon them and were induced thereby to purchase said premises to their injury, and defendant knew them to be false and plaintiff was thereby induced to forbear from inquiry, the plaintiffs would be entitled to recover some damages; but first it would be necessary for you to determine what damages the plaintiffs should recover."

The defendant also complains of instruction number 10:

"I also instruct you that if you find that the representations alleged in plaintiffs' complaint were made, and that they were false, and that the defendant knew them to be false, and that the defendant made them recklessly without knowledge of the truth or falsity of such representations, and that the plaintiffs relied upon such representations to their injury, as I have already instructed you, he will not be heard to say that the plaintiffs were guilty of such negligence to preclude them from recovering compensation for such injuries as were inflicted upon them under cover of such falsehoods, if such false statements were actually made."

The court gave instruction number 11, as follows:

"I further instruct you, gentlemen, as follows: That the law imposes upon one purchasing property the duty to exercise due diligence to protect himself from fraud. By due diligence is meant such diligence as ordinarily prudent men would use; and if you find from the testimony in this case that no confidential relation existed between the parties, that the premises, the subject of the purchase and sale, was shown the

90 Or.—4

plaintiffs and was open to their inspection, and no deceit or artifice was practiced upon them by the defendant to prevent a full examination of and independent inquiry concerning the same, and plaintiffs failed to make such examination and inquiry, then they would have been negligent and not entitled to recover any damage.''

No complaint is made of this part of the charge.

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Rice & Orcutt,* with an oral argument by *Mr. Dexter Rice.*

For respondents there was a brief over the names of *Mr. Oliver P. Coshow* and *Messrs. Neuner & Wimberly,* with an oral argument by *Mr. Coshow.*

BURNETT, J.—According to 39 Cyc. 1997, quoted with approval in *Kruse* v. *Bush,* 85 Or. 394 (167 Pac. 308):

"One who has been induced by fraudulent representations to become the purchaser of property has, upon the discovery of the fraud, three remedies open to him, either of which he may elect: He may rescind the contract absolutely and sue in an action at law to recover the consideration parted with upon the fraudulent contract; he may bring an action in equity to rescind the contract and in that action have full relief; lastly, he may retain what he has received and bring an action at law to recover the damages sustained.''

In the instant case the plaintiffs have adopted the third remedy mentioned by the text-writer. In *Kruse* v. *Bush* the plaintiff had entered into an executory contract to buy some land and had paid part of the purchase price, after which she discovered that she had been defrauded by the vendor. Although she had

not paid in full for the property, she was sustained in her rescission of the contract and her action to recover what she had paid, because she had promptly tendered to the vendor a reconveyance of the tract and had demanded the return of what she had paid.

1-5. It is also a principle of law that if while a contract is yet wholly executory the fraud inducing it is ascertained by a party to it, he waives the deceit if he performs his portion, either wholly or partly. But the rule is otherwise if he does not discover the cheat until he has partly performed: *McDonough* v. *Williams*, 77 Ark. 261 (92 S. W. 783, 8 Ann. Cas. 452). The reason of this doctrine is that while the contract remains wholly executory upon both sides, the matter is yet at large, so that if with knowledge of the fraud either party goes forward in performance of the stipulation, he does so with his eyes open, and the damage resulting, if any, would be in a sense self-inflicted. A different situation is apparent when he innocently enters upon performance and accomplishes part of his covenants. He is then in the condition where he is entitled to keep what he has acquired by the contract and sue for damages, although he may have his election to take either of the other remedies mentioned. In the first case put by Cyc. a rescission is necessary; in the third, none is required. As against a subsequent attempt at utter rescission and recovery of what has been paid on the purchase price, payment of installments of the money agreed to be paid, with knowledge of the fraud, will amount to such a ratification as will defeat complete rescission. The reason is that one wishing to break up the contract entirely must act promptly on the discovery that he has been deceived, and he is not allowed to speculate on whether some advance in values, or the like, will not

save him from loss: *Bell* v. *Keepers,* 39 Kan. 105 (17 Pac. 785). The principle is not controlling where the injured party elects to keep the property and sue for damages alone. In the present litigation the plaintiffs had purchased the property, had acquired the title in fee simple by the conveyance from the defendant and, according to his pleading, they had "delivered their promissory notes secured by a mortgage on said real property for the remainder of the purchase price." In other words, they had promised absolutely and at all events to pay the money, and the defendant had accepted this engagement 'in lieu of such payment. In a sense, the transaction was closed, and while it might have been utterly rescinded by a reconveyance. of the land and a demand for the return of the payments and for the cancellation of the notes and mortgage, if they were still in the control of the defendant, yet the plaintiffs were not compelled to adopt that course.

6, 7. It is said, however, in the answer to which the court sustained a demurrer, that the plaintiffs waived their claim for damages on account of having continued to pay after they discovered the fraud. The conclusion of waiver does not necessarily follow from the facts stated in the defense tendered. It is not averred therein that the plaintiffs intended to forego the right the law gave them to keep the property and sue for damages. Neither does an estoppel result, because it is not shown that the defendant was induced to change his position to his hurt on account of the payments made by the plaintiffs.

"The question of waiver is mainly a question of intention which lies at the foundation of the doctrine. Waiver must be manifested in some unequivocal manner and to operate as such it must in all cases be in-

tentional. There can be no waiver unless so intended by one party and so understood by the other or one party has so acted as to mislead the other and is estopped thereby. Since intention is an operation of the mind, it should be proven and found as a fact, and is rarely to be inferred as a matter of law'': 40 Cyc. 261.

8, 9. The facts stated in the defense under consideration do not show any intention on the part of the plaintiffs to relinquish their right to keep the land and sue for damages on account of its not conforming to the representations of the defendant. The matter alleged may have some value as evidence on the question as to whether the plaintiffs were really deceived or whether their grievance is a mere afterthought growing out of dissatisfaction, but there was no error in sustaining the demurrer to it as a pleading.

10. The instructions requested by the defendant should have been given. The tenth instruction given was faulty in saying in substance that the defendant would be precluded from averring that the plaintiffs were negligent merely because he had made fraudulent statements. The rule is thus tersely laid down by Mr. Justice Bean in *Reimers* v. *Brennan,* 84 Or. 53 (164 Pac. 552):

"A purchaser must use reasonable care for his own protection and should not rely blindly upon statements made by a seller; and between parties dealing at arm's-length where no fiduciary relation exists and no device or artifice is used to prevent an investigation, it is the general rule that a purchaser must make use of his means of knowledge, and failing to do so, he cannot recover on the ground that he was misled by the seller: 30 Cyc. 49; *Allen* v. *McNeelan,* 79 Or. 606 (156 Pac. 274); *Poland* v. *Brownell,* 131 Mass. 138 (40 Am. Rep. 215). Where there has been an inspection by a person making an exchange of property, false rep-

resentations as to the value cannot as a rule be made the basis of an action for damages.'' (Citing authorities.)

Where no fiduciary relation exists between the contracting parties and each is *sui juris* dealing at arm's-length with the other, each is required to use diligence in a reasonable degree to protect his own interest. Neither is held to be the guardian or protector of the other. Neither can inertly shut his eyes to what is manifest to a person of ordinary intelligence. In order to excuse him from reasonable care of his own interest in respect to the subject matter of the contract which is plainly before his observation, there must be some effort on the part of the other party or some condition tending to forestall or prevent investigation. In the precedents cited by the plaintiffs on this point there is usually found some element or circumstance whereby the injured party was deprived of an opportunity to examine for himself and hence, in some degree at least, was compelled to rely upon the misleading statements of the person with whom he dealt. For instance, *Steen* v. *Weisten,* 51 Or. 473 (94 Pac. 834), was a case where the timber-land in question was in a distant part of the state and the plaintiff had no opportunity to see it before buying. In *Boelk* v. *Nolan,* 56 Or. 229 (107 Pac. 689), the half truths about the state of the plaintiff's title to land in Oregon which the defendant sought to acquire were uttered in California where the plaintiff had no opportunity to examine the record or to consult anyone else who knew the facts. *Jeffreys* v. *Weekly,* 81 Or. 140 (158 Pac. 522, Ann. Cas. 1918D, 690), involved a tract of land of such irregular shape that its area could not be estimated with any degree of accuracy, so that under the circumstances of the case the buyer was compelled to rely on the seller's

statement. No such situation is presented here where the plaintiff husband is a civil engineer, confessedly competent to survey the tract with precision and, as he states, could have stepped it and thus ascertained with close approximation how much it contained.

Instructions 10 and 11 were contradictory of each other. In the former, the court eliminated the duty of the purchasers to take reasonable care of their own interest, and in the latter he inculcated it as a precept governing their conduct. The principle that where the parties are dealing on even terms it is the duty of each to exercise reasonable diligence in guarding his own interest is illustrated in *Reimers* v. *Brennan,* 84 Or. 53 (164 Pac. 552), and *Allen* v. *McNeelan,* 79 Or. 606 (156 Pac. 274). The doctrine that in order to excuse either party from thus protecting himself there must be some artifice practiced by the other to thwart investigation, is set out in *Aitken* v. *Bjerkvig,* 77 Or. 397 (150 Pac. 278).

11, 12. It is admitted that the plaintiffs resided on the land almost two months before paying any money or taking the deed, and that they had an opportunity to ascertain the area of plow land, the nature of the soil and most other things the falsity of which they charge against the defendant. Under these circumstances the defendant was entitled to an instruction covering the duty of the plaintiffs to look out for themselves and the court was wrong when it said in one part of the charge that the defendant could not rely upon this rule if he made the fraudulent statements attributed to him, while later in its directions to the jury the court taught the doctrine of the plaintiffs' duty in the respect mentioned. Contradictory instructions have often been held ground for reversal, because they tend to confuse the jury: *Neis* v. *Whit-*

*aker,* 47 Or. 517 (84 Pac. 699). For this reason also the judgment is reversed and the cause remanded for further proceedings.　　　REVERSED AND REMANDED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.