Submitted on briefs April 27, affirmed June 1, costs taxed June 22, 1926.

# CHARLES SCHMAUDER ET AL. *v.* ADAM DELL

### ET AL.

### (246 Pac. 349.)

**Sales—Buyers of Garage Business Who were not Hindered by Seller in Making Inquiry Before Signing Contract Held not Entitled to Rescission Because Seller had Overestimated His Average Gasoline Sales, Where There was No Fiduciary Relation Between Parties, and Business had Declined After Sale.**

1.   Buyers of garage business, who signed contract after having charge of business for ten days, and were not hindered by seller in making inquiry into business, being tendered books and invoices for examination, which they declined, *held* not entitled to rescission because seller had estimated gasoline sales at about one hundred gallons daily in winter and more in summer, but actually sold only sixty-one gallons daily as yearly average, where there was no fiduciary relation between parties, and business had declined after sale.

**Vendor and Purchaser — Representation by Garage Proprietor to Buyers as to Amount of Gasoline Handled Held not to Relate to Real Property on Which Business was Conducted, Which was Purchased from Proprietor's Father-in-law.**

2.   Representation by garage proprietor to buyers as to amount of gasoline handled *held* not to relate to real property on which business was conducted, which was purchased from proprietor's father-in-law, where business and property were bought under separate contracts.

---

Fraud, 26 C. J., p. 1150, n. 79.
Vendor and Purchaser, 39 Cyc., p. 1279, n. 41, p. 1280, n. 45, p. 1423, n. 41, p. 1437, n. 38.

From Yamhill: WILLIAM M. RAMSEY, Judge.

In Banc.

AFFIRMED.

For appellants there was a brief over the name of *Messrs. Collier, Collier & Bernard.*

For respondents there was a brief over the name of *Mr. James E. Burdett* and *Mr. Howard C. Gildea.*

---

1.   See 24 R. C. L. 343.

BURNETT, J.—This is a suit by the purchasers to rescind a contract whereby they agreed to buy, and the defendant Dell and his wife agreed to sell, certain real property. The plaintiffs also seek to revoke a separate contract they had with the defendant Lindroff, wherein he recites the sale to them of his tools and machinery used by him in the garage and repair business in the building situated on the real property, together with the goodwill of the business, and agrees not to engage in competition. in like business in Lafayette, Oregon, for five years.

The plaintiff, Charles Schmauder, had a son who was an expert automobile mechanic whom the father desired to establish in the garage business. The defendant, Adam Dell, had a son-in-law, the defendant Emil Lindroff, who, as stated, was conducting a garage and repair-shop in the building on the real property embraced in the contract between Schmauder and Dell. The son-in-law of the defendant owned the equipment and tools and the business, but the father-in-law, Dell, was the owner of the real property itself. The defendant Lindroff, being desirous of selling the business, advertised the same, with the realty, for sale in some newspapers. One of the advertisements attracted the attention of the plaintiff's son, and he wrote an inquiry to Lindroff. The latter answered thus:

"Lafayette, Ore.
"Mar. 10, 1925.

"A. F. Schmauder
"Dear Sir:
"Your letter of inquiry at hand. My garage is located at Lafayette, Ore., 34 miles from Portland on the West Side highway. This is the main highway to the Tillamook county beaches and gets a lot

of tourist trade. There is one other garage in town, an old shacky building. My building is only three years old, built of tile, cement floor. Building 40x60 stands on corner of lot 80x100. Remainder of lot at side of building. Ideal for a home site or private tourist park. Have steady year around storage of about 12 cars and I'm full to the door almost every night. Carry accessories, tires, tubes, oil and gas. Located in fine farming and dairying community.

"Price includes all small tools, including expansion reamers, taps and dies, 1 1-2 h. p. motor, emery wheel, brake lining machine, grease pump, 10 battery Tunger, air compressor, gas pump and tank.

"In winter we handle about 100 gal. gas each day and in summer of course much more. Over one week end last summer we handled 1600 gal.

"Other business requires our disposing of this property. If you are at all interested in buying a business of your own it will pay you to look into this. Spring is near and business of all kinds is picking up, especially garage business. This will be a quick sale at this price.

"I neglected to say there is an office and ladies rest room and two toilets.

"Sincerely,

"E. LINDROFF."

"P. S. There is enough work in summer that I keep a man most of the time while my wife tends to the office and sells gas and oil. In winter I can tend to the shop work alone with her help as I before said.

E. LINDROFF."

Young Schmauder sent the letter to his father, who was in business at Steptoe, Washington, in pursuance of which the latter came to Lafayette on April 4, 1925, and examined the property and the business, but declined to do anything definite about it until his son had an opportunity for inspection. He returned with his son on April 6th, and the two of them again examined the property and business, made inquiries of the son-in-law, Lindroff, about the same, and paid

$25 as earnest money. They returned again on April 15th, took over the garage and conducted the business for a week or ten days before signing the contract. Indeed, the son testifies that he was in possession of the garage from the 5th to the 23d of April, 1925, before his father made the contract. Becoming dissatisfied with their bargain, the plaintiffs, on August 27, 1925, filed the complaint in this suit in which they say:

"That for the purpose of inducing the plaintiffs to purchase said garage, building and land upon which the same is situated and, also, the tools, equipment, accessories and good will of said business, the defendants did falsely and fraudulently represent and pretend to the plaintiffs:

"(a) That said garage business was a paying concern and that the defendants' business in said garage, in operating the same during the year of 1924, was in the gross Eleven Thousand Dollars ($11,000.00) and that by reason of said business the defendants had realized a net income therefrom between Thirty-two Hundred Dollars ($3200.00) and Thirty-three Hundred Dollars ($3300.00).

"(b) That the defendants had twelve automobiles steady yearly customers as storage cars and were making a good profit thereon, and that every night during said year that his garage was filled to the doors with storage cars.

"(c) That during the winter months they sold to customers gasoline in excess of an average of 100 gallons of gasoline each day and that during the summer months they sold a great deal more than that amount.

"(d) That in order to handle and take care of said business, do the repair upon automobiles and take care of the trade at said place of business, that it was necessary most of the time for the past year for him to keep an extra mechanic employed in order to take care of said work and repair cars which came to their place for repair.

"(e) That said place of business was equipped with all necessary small tools necessary to be used in conducting and operating said garage business and that the same were in good condition and repair and that in addition to said mechanic which was required to do the mechanical work for customers of the said garage, that he said defendant, Emil Lindroff, and his said wife, were kept busy at said garage in selling oil, gas and accessories, in keeping the books and accounts of said garage.

"(f) That other business required them to dispose of this property and equipment, together with its good will and that was the reason why they were offering for sale said property together with the business thereof.

"(g) That said business, together with the garage, the ground, the equipment and accessories, etc., was worth the sum of Five Thousand Ninety-seven Dollars ($5097.00)."

The amount named in the last clause of the charge of fraud last above stated of $5,097 is made up of $4,800, which they agreed in the contract to pay for the real property, plus $297, which they paid for the accessories, such as tires and tubes for automobiles which Lindroff kept for sale. The plaintiffs make no question about this last amount. The alleged falsity of the statements is imputed to the defendants in this language of the complaint:

"That said statements and representations aforesaid made by the defendants and upon which the plaintiffs relied and acted, were false and untrue in this:

"(a) That said garage did not have twelve cars for storage the year around or any cars for all year steady storage in excess of four cars steady storage.

"(b) That the defendants did not sell 100 gallons of gasoline during the winter months each day or an average of 100 gallons of gasoline each day during

the winter months or any sum in excess of 20 or 30 gallons a day.

"(c) That the defendants were not selling gasoline in excess of 100 gallons each day during the summer months or any sum in excess of one-half of that amount on an average each day.

"(d) That said garage was not doing a business that required the services of any mechanic other than Emil Lindroff for the most of the time during the summer months in which he had operated said garage or at any time, except that he said defendants had a helper in said garage for about one month during the summer of 1924.

"(e) That the defendant, Emil Lindroff and his wife, or either of them, were not kept busy in selling gasoline, oil or gasoline or other accessories, or keeping the books and accounts of said garage, but on the contrary that the said business was a losing one and that if the plaintiffs had any books or kept any books, none of them were exhibited or left with the plaintiffs, or left in said place of business.

"(f) That the gross income of said business during the year 1924, was not Twelve Thousand Dollars ($12,000.00) nor was the net income from said business between Thirty-two Hundred Dollars ($3200.00) and Thirty-three Hundred Dollars ($3300.00) a year, and that said business and the returns therefrom were greatly less than Thirty-two Hundred Dollars ($3200.00) and Thirty-three Hundred Dollars ($3300.00), but instead of being the net income of said amount, said business was being operated at a loss.

"(g) That in order to further deceive, cheat and defraud the plaintiffs and at the time the plaintiffs were contemplating buying said business and property as a foresaid, these defendants went out and solicited business to be brought into their garage to make an appearance of business which was artificial without requesting any payments therefor, in order to make a show of activity of business in and around

said garage at the time the plaintiffs were inspecting the same.

"(h) That in order to further deceive and defraud, mislead and cheat the plaintiffs, the defendants after they had bargained for the sale of said business and property removed or caused to be removed from the said garage a portion of the small tools hereinbefore referred to before the plaintiffs took possession of said garage.

"(i) That said business together with the grounds, garage, equipments and accessories, etc., so sold was not worth the sum of Five Thousand Ninety-seven Dollars ($5097.00) or any sum in excess of Twenty-five Hundred Dollars ($2500.00)."

The allegations of fraud are denied by the answer. The case was heard in the Circuit Court before Judge WILLIAM M. RAMSEY, who found generally for the defendants and dismissed the suit, from which decree the plaintiffs have appealed.

Taking up the imputations of falsity last above quoted, we find that the weight of testimony is that the representations in the letter about storage of cars, upon which the plaintiff relied, are substantially true. Likewise, the testimony is plain that the defendant Lindroff did employ other men to assist him during the summer-time, and that he and his wife were busy in making sales of gas and other accessories. Indeed, the wife testified, and it is not disputed, that she attended so closely to the business that she frequently took her household ironing to the garage to do while attending to business. The weight of the testimony also sustains the defendants in their estimate of the amount of business. There is no testimony that the defendants removed from the garage any tools before the plaintiffs took possession, and the charge that the defendants went out and

118 Or.—23

solicited temporary patronage so as to make an artificial appearance of business is not sustained by the testimony.

1, 2. The principal bone of contention is about the sale of gasoline. Referring to the letter above quoted, and upon which the plaintiffs rely, the statement reads thus:

"In the winter we handle about 100 gal. gas each day and in summer of course much more. Over one week end last summer we handled 1600 gal."

The writing of this letter is not disputed. The defendant Lindroff says that it was only an estimate, and the language "*about* 100 gal." gives color to that statement. He says, however, that on going over his invoices and checking up the sales since the suit was begun, he ascertained that it was erroneous, and it appears in testimony that the average daily sale of gasoline during the year 1924 was 61 gallons. It is undisputed that in making the examination of the business, Lindroff tendered to the plaintiffs and to the son his books and invoices for examination but that they declined them.

It will be noted that the contract with the Dells, which the plaintiffs essay to have canceled, contains nothing whatever about the business but only refers to and describes the real property. It is true, plaintiffs claim that they bought the business from Lindroff, and they plead and set forth as an exhibit the separate contract between themselves and Lindroff, whereby he recites sale of the same and the goodwill to the plaintiffs and agrees not to engage in rival business for the space of five years. Thus it will be seen that the representation about the amount of the gasoline sold relates not to the real property, but to the amount of business conducted by Lindroff.

We note that the testimony discloses that every opportunity was offered to the plaintiff and his son to verify all the statements made on that point. They knew where the gasoline was purchased which was afterwards sold by Lindroff. They were offered the inspection of his books and papers from which he himself afterwards computed the actual amount sold and declared that the figure of 100 gallons per day was erroneous.

There is no fiduciary relationship shown to exist between the parties, nor any effort on the part of the defendants, or either of them, to forestall or avoid a full and complete investigation of the title. and extent of the business, and it is without dispute that the plaintiffs and their son declined to make such an investigation. In *Southern Development Co.* v. *Silva,* 125 U. S. 247, 259 (31 L. Ed. 678, 8 Sup. Ct. Rep. 881, see, also, Rose's U. S. Notes), in speaking of this ingredient of fraud, whereby it must be shown that the plaintiff relied upon the alleged representation, Mr. Justice LAMAR said:

"It is essential that the defendant's representations should have been acted on by complainant, to his injury. Where the purchaser undertakes to make investigations of his own, and the vendor does nothing to prevent his investigation from being as full as he chooses to make it, the purchaser cannot afterwards allege that the vendor made misrepresentations."

In our own decisions we have the same rule, as declared by Mr. Justice BEAN, in *Reimers* v. *Brennan,* 84 Or. 53 (164 Pac. 552), wherein he says:

"A purchaser must use reasonable care for his own protection and should not rely blindly upon statements made by a seller, and between parties dealing at arm's length where no fiduciary relation exists and no device or artifice is used to prevent an investi-

gation, it is the general rule that a purchaser must make use of his means of knowledge, and failing to do so he cannot recover on the ground that he was misled by the seller.'' Citing 30 Cyc. 49; *Allen* v. *McNeelan,* 79 Or. 606 (156 Pac. 274); *Poland* v. *Brownell,* 131 Mass. 138 (41 Am. Rep. 215).

Everything of which the plaintiffs complain was open to inquiry. They were not hindered or impeded in any way by or on behalf of the defendants. Indeed, they themselves had charge of the business for about ten days before they signed the contract and knew exactly about the consumption of gasoline during that time. Yet they kept the business until the latter part of August before they instituted any suit to set aside the contract.

The testimony shows that the business declined from the time the plaintiff took possession of the property. The son spent considerable time fishing and playing golf. The plaintiffs who established him in business wish to be restored to their former position, but while they can restore the real property and the tools, yet it would be impossible for them to restore the business and the goodwill thereof as it existed at the beginning of the transaction. The defendants would have to return and again build up their business before they could be made whole.

Under all the circumstances of the case, in the light of the precedents already cited, the plaintiffs have not made such a clear case of fraud as would authorize us to set aside their written agreement. The decree of the Circuit Court is affirmed.

AFFIRMED.