Argued January 4, reversed and remanded February 5, 1918.

## WARD *v.* JENSON.*

### (170 Pac. 538.)

**Fraud—Exchange of Land—Measure of Damages.**

1. For false representations inducing an exchange of land the measure of damages is the difference between the market value of the property parted with by the person defrauded and the market value of the property received by him.

**Fraud—Actionable Fraud—Statements.**

2. As a general rule, a false representation does not constitute actionable fraud unless it relates to a fact which is existent or has existed.

**Fraud—Opinion.**

3. A mere expression of an opinion or a representation in regard to a matter of estimate or judgment does not ordinarily amount to fraud.

**Fraud—Actionable Fraud.**

4. While a representation of value, when standing alone, is usually regarded as a mere opinion, it may, under special circumstances, be treated as representation of fact.

**Fraud—Exchange of Property—Evidence Admissible.**

5. In an action for damages for fraud in exchange of land, defendant's statement as to value of his place, when taken in connection with the other evidence, *held* at least to present jury question whether the representation was one of fact.

**Fraud—Exchange of Property—Matters Known by Plaintiff.**

6. If plaintiff knew that defendant only had a contract to purchase 10 acre tract, and that he had not given a mortgage on it, and, notwithstanding such knowledge, exchanged properties, she cannot predicate fraud upon any statements made by defendant concerning a mortgage.

**Fraud—Evidence—Statements by Defendant.**

7. A witness testifying to a conversation between plaintiff and defendant was properly permitted to state that defendant told plaintiff that the place he was trading to her was worth $18,000, where it was plain that such statement related to the same conversation concerning which plaintiff had already testified.

**Brokers—Knowledge of Agent—Notice to Principal.**

8. That a broker assisting plaintiff in negotiating an exchange was also the agent of defendant could not of itself warrant the re-

---

*On measure of damages for fraudulent representations in the sale or exchange of real estate, see notes in 8 **L. R. A.** (N. S.) 804; 16 **L. R. A.** (N. S.) 818.       REPORTER.

fusal of an instruction that notice to the broker was notice to plaintiff.

**Fraud—Damages—Evidence Admissible.**

9. In action for damages for fraudulently inducing an exchange of lands, evidence as to the value of plaintiff's land was improperly excluded where defendant's answer denied plaintiff's allegation of value of such land.

[As to actions to recover for false representations, see notes in 20 Am. Dec. 626; 18 Am. St. Rep. 555.]

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1.   Statement by MR. JUSTICE HARRIS.

This is an action for damages alleged to have been caused by fraudulent representations inducing the exchange of lands. The plaintiff Lottie E. Ward owned, subject to a $1,700 mortgage, real property in Portland, Oregon. The defendant, Thomas A. Jenson, was in the possession of 14.34 acres of land in Orange County, California, but he owned only 4.34 acres. He had a contract for the purchase of the remaining and adjoining 10 acres for the price of $9,000, of which only $1,000 had been paid. The complaint alleges that for the purpose of inducing her to exchange her Portland property for the Orange County property the defendant falsely and fraudulently represented to her that he had invested $10,000 in the California property; that it had cost him $6,000 to level the land so that it could be irrigated, to buy and set out orange trees and to install a water-pipe line; that the pumping plant on the premises was of sufficient capacity to supply water for irrigating all the property; that from three to six hours was sufficient time for the irrigation of all the tract; that he owned the 10-acre tract; that the whole property was of the value of $18,000; that he had a mortgage to secure the loan of $8,000 on the 10-acre tract and that plaintiff could judge of the value of that tract

by the fact that there was a mortgage on it to secure a loan of $8,000; and that the Orange County property contained 15 acres. The pleading points out the particulars wherein it is claimed that the alleged representations were false. It is alleged that the defendant only had $3,291 invested in the premises; that the total expenditure made by the defendant for trees and a pipe-line and for leveling the 4.34 acre tract was $141, while the 10-acre tract had already been leveled and planted to trees when the defendant contracted to purchase it; that the pumping plant was not of sufficient capacity to supply water for irrigation; that it required from ten to eleven hours at a cost of $1 an hour to irrigate the property; that the two tracts were not worth to exceed $12,000 "including encumbrances"; that the defendant did not own the 10-acre tract, "and there was no mortgage to secure a loan of $8,000 on said 10-acre tract, and said $8,000 mortgage did not indicate the value of said tract," but that defendant had purchased the 10-acre tract on a contract for $9,000 and had paid $1,000, leaving a balance of $8,000 due on the contract; and that the two tracts contained only 14.34 acres of land.

The plaintiff alleges that she believed the representations of the defendant to be true and that, relying on them, she exchanged her Portland property for the California property, to her damage. A trial by jury resulted in a verdict for the plaintiff and the defendant appealed from the consequent judgment.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Hamilton R. Johnstone, Mr. George R. Alexander* and *Messrs. Benson & Benson,* with an oral argument by *Mr. Johnstone.*

For respondent there was a brief over the names of *Mr. Otto J. Kraemer* and *Messrs. Chamberlain, Thomas & Humphreys,* with an oral argument by *Mr. Kraemer.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1. The court instructed the jury that:

"The measure of damages in this case is the difference between the value of the land as it would have been if it was as represented, and the actual market value; in other words: the value which Mr. Jenson represented was the true value and its actual value, which you find is the market value."

This instruction was erroneous. It is settled in this state that in an action to recover damages for false representations inducing an exchange of property the measure of damages is the difference between the market value of the property parted with by the person defrauded and the market value of the property received by him: *Salisbury* v. *Goddard,* 79 Or. 593, 600 (156 Pac. 261); *Purdy* v. *Underwood, ante,* p. 56 (169 Pac. 536). See, also: *Van de Wiele* v. *Garbade,* 60 Or. 585, 591 (120 Pac. 752); *Caples* v. *Morgan,* 81 Or. 692, 706 (160 Pac. 1154); *Smith* v. *Bolles,* 132 U. S. 125 (33 L. Ed. 279, 10 Sup. Ct. Rep. 39); *Sigafus* v. *Porter,* 179 U. S. 116 (45 L. Ed. 113, 21 Sup. Ct. Rep. 34); *George* v. *Hesse,* 100 Tex. 44 (93 S. W. 107, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, 8 L. R. A. (N. S.) 804); *Robertson* v. *Frey,* 72 Or. 599 (144 Pac. 128); *Barbour* v. *Flick,* 126 Cal. 628 (59 Pac. 122); 12 R. C. L. 455.

When testifying as a witness the plaintiff was asked: "Was anything said about the value of the property there?" and over the objection of the defendant she was permitted to answer: "He said his place was worth eighteen thousand dollars, and he had ten thou-

sand dollars invested in it and there was a mortgage of eight thousand dollars against it.'' It is contended that this answer was prejudicial error because the statement attributed to the defendant was only an expression of his opinion of the value of the property and hence did not amount to fraud. The force and effect of the answer of the witness may be better understood if a brief statement is made of some of the testimony given by her both before and after the answer in question. She explained to the jury that she valued her property in Portland at $10,000 and that after deducting $1,700, the amount of a mortgage, its net value to her was $8,300; she testified that the defendant told her that he valued his property at $18,000 and that after deducting the $8,000 mortgage on his property ''there would be a cash difference coming to him''; that she told him that she had no money to pay a cash difference and that thereupon he stated that he would trade even if she would pay his agent's commission but that he was giving her ''two thousand dollars the best of the deal and this was on account of his wife's poor health that he had to make the change.'' The plaintiff also testified that the defendant told her

''that he bought the ten acres for nine thousand dollars, but his reason for buying that was because it had the buildings and pumping plant on, and it had cost him six thousand dollars to level off the land so the water would flow for irrigation and to buy the trees at sixty-five cents a tree and set them out, and that he had ten thousand dollars invested in the property; and, I thought that if he had paid nine thousand dollars for ten acres that it was worth his price; if it had cost him six thousand dollars to level it off and buy the trees and set them out.''

The witness was also asked the following question: ''Was there anything said about any connection be-

tween the value of the property and the mortgage?" and she answered: "Yes. He said you can judge as to the value of the property by the mortgage there is on it." There were between eleven and twelve hundred trees on the two tracts and according to the testimony of the plaintiff: "Mr. Jenson told me that this was preferred stock and that they were selling it at seventy-five cents a tree, but he bought them at sixty-five cents." The plaintiff further explained that she understood that the defendant had expended the $6,000 "for buying trees, and labor in setting them out and leveling off the land, and the pipe line."

2-5. As a general rule, a false representation does not constitute actionable fraud unless it relates to a fact which is existent or has existed in the past; and therefore the mere expression of an opinion or a representation in regard to a matter of estimate or judgment does not ordinarily amount to fraud: 12 R. C. L., p. 244, § 14. A representation of value, when standing alone, is usually regarded as a mere opinion because it largely involves a matter of judgment and estimation about which persons may differ; and yet it may under special circumstances be treated as a representation of a fact: 2 Pom. Eq. Jur., § 878. However, in the instant case the representation that the property was worth $18,000 does not stand alone and by itself but it is coupled with other statements made in support of the representation of value. In 20 Cyc. 18, the rule is stated thus:

"An expression of opinion may be so blended with statements of fact as to become itself a statement of fact. Where one of the parties has superior knowledge on the subject his expression of an opinion which he knows he does not entertain because it is contrary to the facts may be actionable if made for the purpose of inducing another to act upon it, which he does to his injury."

The language just quoted is approved and relied upon in *Olston* v. *Oregon Water Power & Ry. Co.*, 52 Or. 343, 355 (96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 915), where this court held that:

"Although the matter alleged and offered in proof as constituting the fraud is largely a matter of opinion, yet sometimes a statement of an opinion is necessarily based upon a fact or carries with it such an inference of fact that it can be interpreted as a statement of fact, and where it is known to be false and made with intent to deceive, it may be actionable."

The doctrine expressed in 20 Cyc. 18, and approved in *Olston* v. *Oregon Water Power & Ry. Co., supra,* has been repeatedly and consistently announced and affirmed by this court: *Scott* v. *Walton,* 32 Or. 460, 462 (52 Pac. 180); *Boelk* v. *Nolan,* 56 Or. 229, 237 (107 Pac. 689); *Elgin* v. *Snyder,* 60 Or. 297, 304 (118 Pac. 280); *Van de Wiele* v. *Garbade,* 60 Or. 585, 593 (120 Pac. 752); *Turk* v. *Botsford,* 70 Or. 198, 201 (139 Pac. 925); *Koehler* v. *Dennison,* 72 Or. 362, 373 (143 Pac. 649); *Smith* v. *Anderson,* 74 Or. 90, 95 (144 Pac. 1158); *Allen* v. *McNeelan,* 79 Or. 606, 611 (156 Pac. 274); *Jeffreys* v. *Weekly,* 81 Or. 140, 148 (158 Pac. 522). Even though it be assumed, without deciding, that the court could not say as a matter of law that the statement ascribed to the defendant was the representation of a fact, it must be conceded that the court could not say as a matter of law that the statement amounted to nothing more than the expression of an opinion; and, hence, it became at least a question for the jury to decide whether the statement was a mere expression of opinion or the representation of a fact: *Olston* v. *Oregon Water Power & Ry. Co.,* 52 Or. 343, 356 (96 Pac. 1095, 97 Pac. 538, 20 L. R. A. (N. S.) 915); *Smith* v. *Anderson,* 74 Or. 90, 95 (144 Pac. 1158); 12 R. C. L., pp. 247, 248, 282, 446; 20 Cyc. 17. In other words,

the statement attributed to the defendant was either as a matter of law a representation of a fact or it presented a question for the jury to decide whether it was only an expression of opinion or the representation of a fact; and in either event it was proper to receive the answer in evidence.

6. The necessity of a retrial makes it proper to notice the contention of the defendant that the plaintiff knew that there was no mortgage on the ten acre tract. The agreement for the exchange of properties was reduced to writing. The defendant signed the writing on November 10, 1914, and the plaintiff signed on the following day. The record does not show the exact day when the agreement was carried out but it appears that the exchange was completed at some time in January, 1915. The defendant claims that the plaintiff knew that he only had a contract for the purchase of the ten acre tract and that there was no mortgage on the land. If the plaintiff knew that Jenson only had a contract to purchase the ten acre tract and that he had not given a mortgage on it, and, notwithstanding such knowledge, exchanged properties, then she cannot predicate fraud upon any statements made by the defendant concerning a mortgage and the court should not permit the jury to consider any evidence of statements about a mortgage.

7. Another witness, Paul Melby, testified that "Mr. Jenson told Mrs. Ward that the place he was trading to her was worth $18,000." Standing alone the answer of this witness might be objectionable, but the record shows that the witness was testifying concerning a conversation he heard between plaintiff and the defendant and it is evident that the answer of the witness related to the same conversation concerning which the plaintiff

87 Or.—21

had already testified. The testimony of this witness was competent.

8. A real estate broker assisted the plaintiff in negotiating the exchange of properties. The defendant requested the court to instruct the jury that notice to the broker was notice to the plaintiff. The court refused to give the requested instruction. The plaintiff claims that the court was warranted in refusing the instruction upon the theory that the broker was also the agent of the defendant. If there was an entire lack of evidence to show that the broker had knowledge of the things complained of it was proper to refuse the requested instruction; but the fact that a double agency existed, if it did exist, would not of itself under all circumstances warrant a refusal to instruct the jury that notice to the broker is notice to one of the principals. The rule is stated in 2 C. J., 872, thus:

"Notice to an agent, who, with their knowledge and consent, represents both parties to a transaction, is notice to either of them to whom it would be notice if the agent represented him alone, and if each would be charged the notice to the agent is notice to both. Thus where a principal knows that his agent is also acting as agent for the party adversely interested in the transaction, and yet consents to let him act as his agent, the principal is estopped from denying notice and knowledge which the agent has during the negotiations. If, however, either party does not know that the agent is acting for the other, the agent's knowledge will not affect the one who is ignorant thereof."

See, also: 9 C. J., p. 673, § 150; 2 Mechem on Agency (2 ed.), §§ 1837–1839.

9. The court refused to permit the defendant to offer evidence of the value of the Oregon property. The complaint alleges that the parties agreed that the value of the Oregon property, exclusive of the mortgage, was $8,300; but the answer specifically denies this allega-

tion.  Since the measure of damages is the difference between the market value of the property parted with and the market value of the property received it was necessary to ascertain the value of the Portland property.  The parties had the right, if they wished, to agree upon the market value of the property.  The plaintiff says they did agree while the defendant says they did not agree.  The defendant had a right not only to offer evidence for the purpose of showing that they did not agree but he also had a right to offer evidence in support of his contention that no damage resulted to the plaintiff and to do this he must of necessity be permitted to offer evidence of the value of the Portland property.  If the parties did not agree upon the value of the Portland property the jury would be obliged to ascertain its market value: *Rockefeller* v. *Merritt,* 76 Fed. 909 (22 C. C. A. 608, 35 L. R. A. 663).

For the reasons already stated the judgment is reversed and the cause is remanded for a new trial, with directions to the trial court to permit the plaintiff to amend her complaint if she desires.

REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE BURNETT concur.