### JACKS v. MANNING.    (No. 7127.)

Court of Civil Appeals of Texas. Austin. June 15, 1927.

On Motion for Rehearing July 20, 1927.

Further Rehearing Denied Aug. 6, 1927.

**1. Principal and agent �köm180—Common agent has no duty to advise one of principals that other principal is attempting to commit fraud by direct false statements to first.**

Law does not impose on common agent duty to advise one principal that other principal is by false statements made directly to first attempting to commit fraud.

**2. Brokers ⊸102—Statements of real estate brokers with whom parties listed properties exchanged held to render party obtaining unfair advantage liable in damages.**

Where each party to exchange of property had listed property with real estate agents, such agents were not generally common agents of two principals, but acted in different capacities for each, and statements or representations with reference to property of one principal made to other were in furtherance of their authority and binding on first principal, rendering her liable in damages for misrepresentation as to area of land.

**3. Brokers ⊸103—Principal ratifying contract for exchange of property and accepting benefits with knowledge of its contents held liable for broker's misrepresentations as to area of land.**

Where parties to exchange of property had both listed their property with same agents, one of such parties ratifying contract made by agent and accepting deed with knowledge that in contract her property was stated to be a "half block" instead of "half lot," and who forcibly took possession of property which she received in exchange, was bound thereby and liable for misrepresentation of agent as to area of land in pointing out property to other party.

**4. Fraud ⊸13(1)—Party to exchange of property, suffering loss through misrepresentations both in contract and by agent as to amount of land, may recover damages.**

Where party to exchange of property suffered loss through reliance on misrepresentations of agent as to amount of land he was to receive, which was misstated in contract, he may, after other party has forcibly obtained possession of his land, recover damages therefor, with deduction for amount of rentals from his own property for period of detention.

**5. Liens ⊸7—Party defrauded in exchange of property held to have right to lien for damages on property which he exchanged.**

Where party to exchange of property was defrauded as to amount of land which he was to receive, he was entitled to lien for damages against property which he had exchanged.

### On Motion for Rehearing.

**6. Exchange of property ⊸6—Party to exchange of property held entitled to full performance by other party, who had received all benefits thereunder, or reimbursement for deficiency, regardless of insufficiency of contract to support specific performance.**

Where party to exchange of property had received everything which he was to receive under contract, other party thereto was entitled to full performance on her part, or reimbursement for any deficiency in amount of land to be conveyed, regardless of fact that contract was not sufficient to support specific performance.

**7. Appeal and error ⊸662(4)—Appellate court may not go behind statement of facts to ascertain evidence at trial.**

Under present rules of practice, appellate court may not go behind statement of facts to ascertain evidence at trial, but may consider notes.

**8. Appeal and error ⊸1177(7)—On reversal proper practice is to remand cause for new trial unless it has been fully developed.**

Proper practice on reversal of trial court's judgment is to remand cause for new trial unless record shows case has been fully developed and no issue of fact for jury is raised.

**9. Appeal and error ⊸1177(5)—Failure to submit to jury fact issue as to agent's misrepresentations as to area of land to be exchanged held to require new trial.**

In trespass to try title by party to exchange of properties, in which defendant filed crossaction for misrepresentations as to area of land he was to receive, in view of showing by motion for rehearing with question and answer transcript of testimony attached that issue whether agent in negotiating exchange of property pointed out half block or merely east half of one of four tracts in block as property de-

---

fendant was to get, which raised question not 'submitted to jury, judgment, in so far as it denied recovery on defendant's cross-action, should be reversed and remanded for new trial.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Trespass to try title by Mary L. Manning against C. A. Jacks, tried on defendant's cross-action for damages for a misrepresentation in the exchange of properties. From the judgment below, defendant appeals. Affirmed in part, and in part reversed and remanded.

Lee R. Stroud, of Dallas, for appellant.
Renfro, Ledbetter & McCombs, of Dallas, for appellee.

McCLENDON, C. J. This case arose out of the following facts, which are without substantial dispute:

Jacks, the appellant, owned a residence situated on McKinney avenue, in Dallas, which he had listed for sale with Hull & Co., real estate brokers. Mrs. Manning, the appellee, owned the east one-half of lot 7 in Glendale Acres, an addition to the city of Dallas, which she also had listed for sale with Hull & Co. On April 29, 1921, Steger, a representative of Hull & Co., told Jacks of Mrs. Manning's property, representing it to be a half of block 7 in Glendale Acres, and stated that a trade could be made for his McKinney avenue property by putting in the half block in Glendale Acres for $1,250. Jacks went with Steger and inspected block 7 in Glendale Acres, and Steger told him he would get half of the block in the trade. The uncontradicted evidence is that the entire block was unimproved, was covered with Johnson grass, and was practically uniform in value, and that the half block was worth approximately $1,250. Steger and Jacks returned to the office of Hull & Co., where the latter prepared a written contract whereby Mrs. Manning was to purchase the McKinney avenue property for a total consideration of $6,250, part of which was cash, part represented by the assumption of lien notes, and the balance as follows:

"And a warranty deed to one-half block of land in Glendale Acreage, valued at $1,250, being three (3) lots."

The contract contained in the record appears to be signed as follows: "[Signed] C. A. Jacks, Seller, by W. F. Hull & Co., Agents. [Signed] Mrs. Mary L. Manning, Purchaser, by C. M. Reid. I agree to pay W. F. Hull & Co. $250 for commission. [Signed] C. A. Jacks."

Both Jacks and Steger testified that Jacks signed the contract in person, and Hull & Co. signed it for Mrs. Manning. Mrs. Manning testified that the contract was "signed for me by Hull & Co., or a member of that firm."

This is the only explanation of the signature of Reid. It is undisputed that the contract was drawn by Hull & Co. as the representative of both parties. It provided that each party was to furnish the purchaser a title policy to the property conveyed. The details of closing the trade and obtaining the title policies were left with Hull & Co. Jacks and wife signed and acknowledged a general warranty deed prepared by Hull & Co. conveying to Mrs. Manning the McKinney avenue property. Hull & Co. informed Jacks that there was some trouble about the title to the Glendale Acres which needed straightening out, and that the deed from Mrs. Manning would be a little delayed on that account, but would be forthcoming, and suggested that he deliver to them for Mrs. Manning the deed to the McKinney avenue property; and they would later get the deed and title policy to the Glendale Acres property. This he did, and the transaction was closed so far as he was concerned, he receiving all the other consideration for the McKinney avenue property. After waiting several weeks Jacks called at the office of the Title Guaranty Company, inquiring whether his deed and policy were ready, and was told that the company could not make the policy to the property named in the written contract, because it called for a half block, whereas Mrs. Manning owned only a half lot, and that the deed left with the company only covered a half lot. He was then shown the deed, which conveyed the west half of lot 1, block 7, Glendale Acres. He inquired of the company what to do about it, and was advised to get a lawyer, but replied:

"No; let me have that deed which they left for me, and I will take it up with the Hull & Company office and call their attention to it and ask them to straighten it out and make it all right."

He then took the deed to Hull & Co's. office, and was there told: "That is all you are going to get." After this conversation he placed the matter in the hands of his attorneys. About this time or very shortly afterwards, Mrs. Manning instituted suit in trespass to try title to recover the McKinney avenue property, sued out a writ of sequestration, and dispossessed Jacks under the writ; since which time she has held possession. Jacks' attorneys advised him that he had the right either to rescind the sale and recover back the McKinney avenue property, or confirm the sale and recover the value of the three-fourths of the half block to which he was entitled under the contract, but which was not covered by Mrs. Manning's deed; and in view of the fact that Mrs. Manning had already gone into possession of the McKinney avenue property, and had paid the cash consideration and probably interest on the lien indebtedness, it would be better or simpler for him to file a cross-action for the value of three-fourths of the half block in Glendale

Acres, as it would be necessary for him, if he should rescind the sale, to place Mrs. Manning in statu quo. This course was followed, and upon the trial, which was to a jury, Jacks confessed judgment upon Mrs. Manning's suit for title to the McKinney avenue property, and upon her claim for $300 rentals during the period (four months) between the date of Jacks' deed and the execution of the sequestration writ; and the case went to trial upon the cross-action of Jacks.

Special issues were submitted to the jury which resulted in the following findings: (1) That Mrs. Manning in her deed conveyed to Jacks "the land she had contracted to convey to him"; (2) that the reasonable cash value of the land which she contracted to convey to him was $300; and (3) that the reasonable cash value of the land she actually conveyed to him was $300." Upon these findings the trial court rendered judgment decreeing the McKinney avenue property to Mrs. Manning, and the east half of lot 1, block 7, Glendale Acres, to Jacks, awarded Mrs. Manning a personal judgment against Jacks for $300 rentals, and denied recovery to Jacks on his cross-action.

The only question presented by the appeal is whether the evidence supports the judgment denying to Jacks recovery on his cross-action.

Appellee has not briefed the questions in the case, and the only theory which suggests itself to us upon which the court below submitted the above issues to the jury and declined to render judgment for Jacks on his cross-action is that there was a mutual mistake in describing the Glendale Acreage property as a half block, and that Jacks got all the property he in fact bargained for. The contract expressly calls for a half block in Glendale Acres, but it does not give the number of the block. As to the amount of property Jacks was to receive, the contract is clear and unambiguous. It is uncontradicted that Jacks was shown block 7 in Glendale Acreage, and that he was told by Steger that he was to get a half of that block. In so far as Jacks personally was concerned, there was therefore no mistake. Mrs. Manning testified that she had nothing to do with the negotiations leading up to the trade; that this was all done by her agents, Hull & Co., who signed the contract for her, but that she did not authorize them to sell any property she did not own, and she only owned the one-half lot conveyed in her deed. The contract was drawn by Hull & Co., who had already through Steger represented to Jacks that he was to get the half of block 7, and the inclusion of a half block in the contract was the act of Hull & Co., and resulted, we assume, from a mistake on their part. The theory of mutual mistake can be applied only by imputing to Jacks the knowledge of Hull & Co. as his agents, under the doctrine that the knowl-edge of the agent acquired in the course of the agency is the knowledge of the principal.

The following is quoted from 2 C. J. 872:

"Notice to an agent, who, with their knowledge and consent, represents both parties to a transaction, is notice to either of them to whom it would be notice if the agent represented him alone, and if each would be charged the notice to the agent is notice to both. Thus where a principal knows that his agent is also acting as agent for the party adversely interested in the transaction, and yet consents to let him act as his agent, the principal is estopped from denying notice and knowledge which the agent has during the negotiation."

An examination of the authorities, however, will show that this general statement of the rule is subject to a variety of qualifications and exceptions. A well-considered case by the Circuit Court of Appeals for the Seventh Circuit is Bank v. Munger, 95 F. 87, wherein it is shown that the rule has different application in different classes of cases. Where the question arises between one of the principals and a third party, it would seem that the rule above announced is generally followed; but where the controversy is between the two principals with reference to the transaction in which the common agent acted, manifestly the rule would operate unjustly if arbitrarily applied in every case. An examination of the cases will show that the court took into consideration the relation of each party to the agent and determined the controversy, in most cases at least, from the viewpoint of the duties resting upon the agent to his principals respectively, rather than by applying the general rule indiscriminately. It is manifest that where the controversy is between the two principals, the rule if arbitrarily applied might operate as a two-edged sword, for if all the knowledge which the agent acquires during the course of the transaction is imputed to both principals, then neither principal could under any circumstances recover for the fraud or mistake of the agent, and under this application of the rule the parties would be bound as their agent had sought to bind them without reference to any fraud or mistake. Thus Mrs. Manning would be charged with knowledge that Steger had mistakenly represented to Jacks that she owned half of block 7 which was to go into the trade, and therefore she would be bound by the contract which her agents made with Jacks for a half block of ground, and could not set up mutual mistake as a defense to relieve her from the obligation which the contract imposed.

In Ward v. Jenson, 87 Or. 314, 170 P. 538, the Supreme Court of Oregon cited the above quotation from Corpus Juris, and made the following holding:

"A real estate broker assisted the plaintiff in negotiating the exchange of properties. The defendant requested the court to instruct the

jury that notice to the broker was notice to the plaintiff. The court refused to give the re-quested instruction. The plaintiff claims that the court was warranted in refusing the in-struction upon the theory that the broker was also the agent of the defendant. If there was an entire lack of evidence to show that the broker had knowledge of the things complained of, it was proper to refuse the requested in-struction; but the fact that a double agency existed, if it did exist, would not of itself un-der all circumstances warrant a refusal to in-struct the jury that notice to the broker is notice to one of the principals."

[1] We very seriously question the sound-ness of this holding. In that case the plain-tiff sought to recover for fraudulent state-ments made to plaintiff direct by defendant as an inducement to the sale. The agent's knowledge of the falsity of such statements could only be imputed to the plaintiff upon the theory that it was the duty of the com-mon agent to inform the plaintiff thereof; which duty, if he had performed it, would have brought to plaintiff actual knowledge of the attempted fraud, and thereby defeat-ed recovery. We do not think, however, that the law imposes upon a common agent the duty of advising one of his principals that the other principal is by false state-ments made direct to the first principal at-tempting to commit a fraud on him. Where one of the principals in his direct dealings with the other principal makes false and fraudulent statements, the latter's right to rely thereon should not be affected by the un-disclosed knowledge of the common agent.

In the more recent Kentucky case of Bank v. Surety Co., 195 Ky. 504, 243 S. W. 13, the general rule above announced was applied as follows: The cashier of the plaintiff bank was also agent for the defendant surety com-pany in soliciting and delivering policies of burglary insurance. The bank's board of directors instructed the cashier to obtain a policy with a certain coverage. There was correspondence between the cashier and the general agent of the surety company, and finally the policy in suit was written and was delivered by the cashier to the board of directors, with the statement that it provided for the desired coverage. There was a loss, and the bank sought to hold the surety com-pany on the basis of the coverage which the bank had instructed its cashier to procure. The court held that the cashier was agent for both parties, and the bank was bound by his acts in accepting the policy. We read from the opinion:

"It seems clear that Kemper was both the agent of the bank and the insurance company for the purpose of obtaining the $25,000 policy of burglary insurance. It follows therefore, that his acts were the acts of the bank as well as of the insurance company. He had authority to accept from the insurance company the char-acter of policy which he delivered to the board of directors, and which they accepted and ap-proved."

Thus in that case the parties were held bound by the acts of the common agent to the terms of the contract as written. By this application of the principle to the pres-ent case, both parties are bound to the con-tract as made with Jacks and as written.

[2] Another, and as we think the correct, view is that Hull & Co. were not the common agents generally of the two principals, but that they acted in different capacities for each. Jacks had listed his property with them for sale and Mrs. Manning had listed hers. They were the agents of Mrs. Man-ning in the sale of her property, and any statements or representations with reference thereto made to Jacks by them were in fur-therance of their authority to sell her prop-erty and she should be held bound thereby.

[3] In addition to these considerations, we think Mrs. Manning was bound by the terms of the written contract and the representa-tions of Steger in pointing out the property Jacks was to get from Mrs. Manning, for the further reason that she ratified the contract and accepted its benefits with knowledge of its contents. We quote from her testimony upon which there is no dispute:

"I had nothing to do with reference to the negotiations or trade until some time after it had been closed up by the contract of sale, and then after I learned about the contract and the sale I received my deed and have done what I stated under the contract."

[4] Under this testimony, Mrs. Manning is clearly estopped from claiming the advan-tage of a mistake made by her agents in nego-tiating the sale with Jacks. The latter was certainly not at fault in any way. He made the trade in good faith and was to get a full half of block 7. The contract called for that quantity of land. He and his wife signed the deed to their homestead and delivered it to the common agent for Mrs. Manning, on the faith of the representations of Steger and the express terms of the written contract. Mrs. Manning accepted this deed with knowl-edge of the contract and forcibly took posses-sion of the McKinney avenue property. It would be inequitable and unjust to entertain her claim that she did not in fact intend to convey the full amount of property called for in the contract, and thereby defeat Jacks' right of recovery on the contract as made in so far as he was concerned and as actually written.

[5] The jury found that one-fourth of the half block covered by Mrs. Manning's deed was worth $300. This finding, in connection with the undisputed fact that the entire block was of practically uniform value, fixed the value of the half block at $1,200. Jacks is therefore entitled to recover $900, less the $300 admitted rentals, and he is also enti-

tled to a lien on the McKinney avenue property to secure the payment of this balance.

The trial court's judgment decreeing to Mrs. Manning the McKinney avenue property and to Jacks the east half of lot 1 in block 7, Glendale Acres, is affirmed. In all other respects the trial court's judgment is reversed and judgment is here rendered in favor of Jacks against Mrs. Manning for the sum of $600, with interest thereon at the rate of 6 per cent. per annum from the 21st day of July, 1921, and all costs both of the trial court and on appeal, which said recovery is hereby decreed to be secured by a lien upon the McKinney avenue property described in the trial court's judgment, which lien is hereby foreclosed and may be enforced by order of sale and execution as required by law.

Affirmed in part, and in part reversed and rendered.

### On Motion for Rehearing.

[6] Appellee urges that the description of the Glendale Acres property in the contract of sale was not sufficient as a basis for a suit for specific performance; that there was ambiguity in that description as one-half block being three lots; and that in any event it was competent to show by parol the actual property intended to be conveyed. We may concede all these propositions. The description was clearly not sufficient to support specific performance, but under the uncontradicted evidence that Mrs. Manning had received everything which she was to receive under the contract, Jacks was entitled to full performance on her part, or reimbursement for any failure therein. It may be that the description was ambiguous, but the undisputed facts show that the block was not divided into lots, but into four tracts, each of which was 300x150 feet. As there is no standard size for lots, the half block might have been subdivided into three lots just as it is claimed the half tract was subdivided. The uncontradicted evidence, however, shows, as stated in our original opinion, that Steger pointed out a half block to Jacks and told him that he was getting a half block in the trade. This uncontradicted oral testimony was in accordance with the description in the contract. On this point the evidence does not raise any issue of fact.

[7-9] Appellee further contends in her motion that the statement of facts does not properly reflect the testimony of Steger, and attaches a question and answer transcript of his testimony, certified by the official court reporter. The motion is not controverted. Under our present rules of practice, we are not permitted to go behind the statement of facts to ascertain the evidence on the trial; but we may consider the notes to determine the proper disposition of the case. Under the showing made in the motion an issue of fact is clearly raised as to whether Steger pointed out to Jacks a half block or merely the east half of one of the four tracts in the block as the property he was to get from Mrs. Manning. The proper practice upon the reversal of a trial court's judgment is to remand the cause for a new trial, unless it appears from the record that the case has been fully developed and no issue of fact for the jury's determination is raised. Under this rule, we think it our duty to remand the cause for a new trial.

Our former judgment is set aside, and in its stead the trial court's judgment decreeing to Mrs. Manning the McKinney avenue property and the personal judgment against Jacks for $300 rentals besides interest, and decreeing to Jacks the east half of lot 1, block 7, Glendale Acres, is affirmed. In all other respects the trial court's judgment is reversed and the cause remanded to that court for a new trial.

Granted in part, and in part overruled.