IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-03-00274-CV

 

Hazlewood Patterson Company

and Travis Hazlewood,

                                                                      Appellants

 v.

 

Michael P. Hancock, et al.,

                                                                      Appellee

 

 

 



From the 18th District Court

Johnson County, Texas

Trial Court # 46-96

 



MEMORANDUM 
Opinion



 

          Five investors (“Plaintiffs”) in the
King No. 1 gas well sued the operator, Hazlewood Patterson (“HP”), and its
president, Travis Hazlewood (Travis) for fraud and breach of fiduciary duty
arising out of the settlement of an earlier lawsuit.  The case was tried to a jury, which returned
a verdict against HP and Travis and awarded actual and punitive damages.  HP and Travis bring this appeal.




BACKGROUND

          Plaintiffs are five of eighteen
investors in the King No. 1 gas well. 
The well was only marginally profitable, so a contractor was hired to
perform a “squeeze job” on the well.  As
a result of the squeeze job, tubing inadvertently became cemented in the
well.  One of the investors, Mike
Hancock, met with Travis, Tom Hazlewood (an investor who did not join this
suit), and Robert Sparks, an attorney.  Sparks was retained to
sue the contractor on behalf of HP.  Sparks sought $1
million in actual damages, $5 million in punitive damages for negligence and
gross negligence, and damages under the DTPA. 


          The case was ordered to
mediation.  Travis and Sparks attended the
mediation.  The contractor and HP agreed
to settle for $600,000.  Travis testified
that a decision was made to pay $407,204 to the investors and to pay the
balance ($192,796) to HP.  Travis did not
inform the investors that the case had settled for $600,000, and he told
Hancock that the case had settled for $407,204. 
Suspecting that the settlement had been larger than $407,204, the
Plaintiffs brought this action, alleging breach of fiduciary duty and fraud.

          On
summary judgment, the trial court ruled that HP had acted as the investor’s
agent.  The jurors unanimously found that
HP had breached its fiduciary duty and that Travis had knowingly participated
in that breach.  They also found that
Travis, individually, had been the investor’s fiduciary and that he had
breached his fiduciary duty.  They found
that both HP and Travis had committed fraud. 
The jurors found that the investors had suffered actual damages of
$192,796, and they assessed punitive damages of $192,796 against HP and
$192,796 against Travis.  The trial court
reduced the $192,796 in actual damages to $83,470 to reflect the percentage of
the plaintiffs’ working interest in the well.

          HP and Travis bring twelve issues on
appeal.

Damages

          HP’s
and Travis’s first issue argues that there is “no evidence” to support the
damages finding.  They claim that the
jury’s finding that the replacement cost of the well was $408,003 established
the maximum amount, by law, that the investors and the working interests of the
well could recover.  They argue that the
investors could not have recovered, in the underlying litigation, damages above
that amount, and that all damages above that amount were damages sought by HP
that were unique to it and could not be recovered by the investors and the
working interests.  They contend that
because the investors recovered all of the damages to which they were entitled,
the Plaintiffs could not carry their burden of proof on fiduciary duty, fraud
or damages.  The Plaintiffs claim that
the proper measure of damages is not the $408,003 replacement cost and that the
jury’s finding of damages of $192,796 is controlling.

          HP
and Travis rely primarily on Atex for
their contention that the investors could recover no more than the replacement
cost of the well.  Atex Pipe & Supply, Inc. v. Sesco Production Co., 736 S.W.2d
914 (Tex. App.—Tyler 1987, writ denied). 
In Atex, a production company
sued a supply company alleging that defective tubing sold by the supply company
collapsed, causing damage to an oil well. 
The Tyler Court of Appeals held that loss of production was an improper
measure of damages.  Id. at 917. 
The proper measure of damages for a damaged well is the cost of drilling
and equipping another such well, less the value of any salvage; if this cost
exceeds the value of the well, the proper measure of damages is the difference
in the market value of the well, as equipped, immediately before and
immediately after the damage.  Id.

          Atex sets forth the measure of damages
for a damaged well.  We reject HP’s and
Travis’s contention that the Atex
rule, as a matter of law, caps the amount of money the investors could have
received in the settlement negotiation. 
It is undisputed that additional claims other than damage to the well
were made in the suit between HP and the cement contractor.  The fact that the contractor settled the case
for $600,000, a figure much higher than the replacement cost of the well,
demonstrates that other claims were in consideration.  The Atex
holding would not preclude the investors from settling their claims for
whatever amount the contractor was willing to pay.

          HP
and Travis assert that all of the claims other than those for damage to the
well are for damages unique to HP.  They
point out that the suit against the contractor included DTPA claims, and argue
that those claims must be unique to HP because the interest owners are not
consumers under the DTPA.[1]  They also refer to a demand letter sent by Sparks to the contractor which claims $300,000 for
“[o]ther damages including injury to reputations, lost goodwill, lost
opportunity costs and attorney’s fees.” 
However, the demand letter does not say that these claims are unique to
HP.  At trial, the Plaintiffs each
testified that he or she never knew that HP was seeking any damages of its
own.  More significantly, the settlement
agreement does not indicate which damages—and in what amount—the $600,000
represents.  The Plaintiffs presented
evidence that the attorney’s fees for the litigation against the contractor
were paid by the investors.  The
Plaintiffs presented evidence that there were claims in the demand letter over
and above the replacement cost of the well that were not unique to HP.

          HP
and Travis argue that there is no evidence for the amount of damages awarded in
the judgment.  When the complaining party raises a
"no-evidence" point challenging the legal sufficiency of the evidence
to support a finding that favors the party who had the burden of proof on that
finding, we must sustain the finding if, considering only that evidence and the
inferences which support the finding in the light most favorable to the finding
and disregarding evidence and inferences to the contrary, any probative
evidence supports it.  Browning-Ferris,
Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993). 
If there is more than a scintilla of evidence to support the finding,
the no-evidence challenge fails.  Id.  As
stated above, the Plaintiffs presented evidence that they were seeking damages
in addition to the replacement cost of the well.  Each testified that he or she understood HP
to be seeking only damages on behalf of the working interest owners and not
damages unique to HP.  Thus we find more
than a scintilla of evidence to support the jury’s damage findings.  We overrule the first issue.

          Having
overruled the first issue, we need not consider HP’s and Travis’s second issue
of whether the damage award could be justified under a theory of forfeiture or
disgorgement.  Imputed Knowledge

          HP’s
and Travis’s third issue argues that because Sparks was the investor’s lawyer, his knowledge of the
full settlement of $600,000 is imputed to the investors.  They argue that because the recovery for
breach of fiduciary duty and fraud was based on nondisclosure, the judgment
should be reversed.

          Knowledge
or notice to an attorney, acquired during the existence of the attorney-client
relationship and while acting in the scope of his authority, may be imputed to
the client.  See McMahan v. Greenwood,
108 S.W.3d 467, 480-81 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); Lehrer v. Zwernemann, 14 S.W.3d 775, 778
(Tex. App.—Houston [1st Dist.] 2000, pet. denied).  Sparks represented both HP and the investors in the
litigation against the cement contractor. 
According to Travis, Sparks suggested that they accept the $600,000 settlement, pay $407,204
to the investors, and pay $192,796 to HP. 
Travis testified that Sparks warned him that he could not disclose the terms
of the settlement to anyone.  Sparks did not testify at trial.  However, HP and Travis introduced a letter
from Sparks to Hancock, written in reply to Hancock’s request for disclosure of
the full settlement, in which Sparks refuses that request and refers any
accounting questions to HP.  Based on
this evidence, the jury could have concluded that Travis and Sparks agreed not to disclose the amount of the
settlement to the investors.  We will not
apply the imputed knowledge doctrine to such a circumstance.  See
GXC, Inc. v. Taxacal Oil & Gas, 977 S.W.2d 403, 410 (Tex. App.—Corpus
Christi 1998, pet. denied) (where an agent represented both a purchaser and a
seller, his knowledge was not automatically imputed to the seller); Lowe v. Lowe, 971 S.W.2d 720, 724 (Tex.
App.—Houston [14th Dist.] 1998, pet. denied) (holding that the imputed
knowledge doctrine did not apply where the lawyer had misled the client, or
wholly failed to perform his or her professional duties); First Fin. Dev. Corp. v. Hughston, 797 S.W.2d 286, 292 n.2 (Tex.
App—Corpus Christi 1990, writ denied) (agent’s knowledge of a dangerous
condition could not be imputed where he concealed the dangerous condition from
his principal); Jacks v. Manning, 297
S.W. 588, 590 (Tex. Civ. App.—Austin 1927, n.w.h.) (“Where the question arises
between one of the principals and a third party, it would seem that the
[imputed knowledge rule] is generally followed; but where the controversy is
between the two principals with reference to the transaction in which the
common agent acted, manifestly the rule would operate unjustly if arbitrarily
applied in every case.”); Mays v. First
State Bank, 247 S.W. 845, 846 (Tex. Com. App. 1923, judgment adopted) (when
an agent acts for the benefit of other persons who are opposed in interest to
his principal . . . the presumption that he discloses all facts that have come
to his knowledge no longer prevails).

          We overrule this issue.

Travis’s Liability

          HP and Travis argue that the evidence
is legally and factually insufficient to support any finding of individual
liability against Travis.  In reviewing
no evidence issues, we consider only the evidence supporting the verdict and
draw all inferences in the light most favorable to the verdict.  Checker
Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000, pet.
denied).  When considering a factual
sufficiency challenge to a jury's verdict regarding an issue on which the
appellant did not have the burden of proof, we must consider and weigh all of
the evidence, not just the evidence that supports the verdict.  Id.

Fiduciary Duty and Fraud

          HP’s and Travis’s fourth issue argues
that there is no evidence supporting the jury’s finding in Question 1 that a
fiduciary relationship existed between the investors and Travis
individually.  Because no objection was
made to the charge, we review the sufficiency of the evidence based on the
charge given.  Osterberg v. Peca, 12 S.W.3d 31, 55 (Tex. 2000) (“[I]t is
the court’s charge, not some other unidentified law, that measures the
sufficiency of the evidence when the opposing party fails to object to the
charge.”).  The jury was instructed that:
“A relationship of trust and confidence existed if the Plaintiffs justifiably
placed trust and confidence in Travis Hazlewood, individually and not only as
representative of Hazlewood-Patterson, to act in the Plaintiffs’ best interest
regarding the settlement of a lawsuit.”

          HP and Travis point out that most of
the plaintiffs had no personal relationship with Travis and had never met
him.  They argue that Travis attended the
mediation as a representative of HP, and that Travis had no relationship with
the investors apart from his capacity as president of HP.  Plaintiffs argue that they testified that
they placed their trust in Travis, and that this “subjective trust” is
sufficient to support the jury finding. 
However, their testimony that they trusted Travis to represent them does
not address the issue of whether Travis was representing them in the earlier
suit as an individual or whether Travis was representing the investors as
president of HP.  Plaintiff’s contractual
relationship was with HP, not with Travis individually.  There is no evidence of substantive dealings
between the plaintiffs and Travis that would justify a special relationship of
trust and confidence.  See Burleson State Bank v. Plunkett, 27
S.W.3d 605, 611 (Tex. App.—Waco 2000, pet. denied).

          Accordingly, we find no evidence to
support the jury’s finding in Question 1. 
Question 2, regarding breach of fiduciary duty, and Question 5,
regarding fraud by Travis individually, were both conditioned on a finding in
Question 1 that Travis, individually, was the investor’s fiduciary.  Because there is no evidence to support such
a finding, the findings in Question 2 and 5 also fail.  We sustain this issue.

Knowing Participation

          HP’s and Travis’s fifth issue argues
that the evidence is legally and factually insufficient to support the jury’s
finding in Question 4 that Travis knowingly participated in HP’s breach of
fiduciary duty.  They state that there is
no evidence that Travis was aware of HP’s fiduciary duty to the interest
owners.  We disagree.  Mike Hancock testified that he, Travis, and
Tom Hazlewood agreed that HP would pursue the claim against the contractor as
the investors’ agent.  Travis signed the
settlement documents as the authorized representative of the working interest
owners.  The evidence is legally and
factually sufficient.  We overrule this
issue.

HP’s Liability

          HP’s and Travis’s sixth issue argues
that the evidence is legally and factually insufficient to support any finding
of liability against HP.  They argue that
Question 3, regarding breach of fiduciary duty, and Question 6, regarding
fraud, should not have been submitted because HP did not owe a fiduciary duty
to the plaintiffs.  The trial court
decided on summary judgment that HP was the Plaintiffs’ agent in settling the
litigation with the cement contractor. 
The evidence is legally and factually sufficient to support that finding.  HP represented the Plaintiffs in the
settlement mediation.  HP signed the
Compromise Settlement Agreement on its own behalf and as the authorized
representative of the working interest owners.

          HP and Travis argue that the court
erred in instructing the jury that HP owed plaintiffs a fiduciary duty.  However, they did not object to the instruction
at trial.  Rather, they objected to the
submission of Question 3 on the ground that there was no evidence to support
its submission.  The issue of whether the
instruction was error was not preserved for appeal.  See
Willis v. Donnelly, 118 S.W.3d 10, 33-34 (Tex. App.—Houston [14th Dist.]
2003, no pet. h.).  We overrule this
issue.




Attorney’s Fees

          HP’s and Travis’s seventh issue argues
that the evidence is legally and factually insufficient to support the amount
of attorney’s fees awarded.  They claim that
the trial court should have adjusted the attorney’s fees when it reduced the
actual damages to reflect the Plaintiffs’ percentage of ownership in the
well.  However, the evidence is
sufficient to support the amount awarded even after the actual damages have
been reduced.  The evidence at trial was
that the Plaintiffs’ attorneys charged an hourly rate until the bill reached
$25,000, plus 15% of the recovery.  The
Plaintiffs recovered $83,469.73 in actual damages, $68,353.79 in prejudgment
interest, plus $385,592.66 in exemplary damages.  The award of $82,838.90, which the jury found
to be reasonable and necessary, does not exceed $25,000 plus 15% of the total
recovery in the suit.  We overrule this
issue.

Exemplary Damages and Malice

          HP’s and Travis’s eighth and ninth
issues argue that because the evidence was legally and factually insufficient
to support a finding that either HP or Travis acted with “malice,” the judgment
for exemplary damages should be reversed. 
HP and Travis did not object to the “malice” charge.  We therefore review the sufficiency of the
“malice” finding against the charge as submitted.  Osterberg,
12 S.W.3d at 55.  In Question 15,
regarding HP’s conduct, “malice” was defined as either:

a.     
conduct specifically intended by Hazlewood-Patterson to cause
Plaintiffs substantial injury, or

 

b.     
an act carried out by Hazlewood-Patterson with a flagrant disregard
for the rights of others and with actual awareness on the part of
Hazlewood-Patterson that the act will, in reasonable probability, result in
damage.

 

The evidence is
legally and factually sufficient to support the finding that HP specifically
intended to cause Plaintiffs substantial injury.  HP and Travis intended to keep the amount of
the settlement secret.  HP intended to
keep the $192,796 for itself and not pay it to the investors.  There is some evidence of specific intent to
injure the plaintiffs.  HP and Travis
claim that because Travis was acting on Sparks’ advice, he
could not have the specific intent to injure the plaintiffs.  However, Travis’s testimony regarding his
motivation was uncorroborated, and the jury could have disbelieved it.  Considering the evidence for and against the
finding, the evidence is factually sufficient to support the jury’s answer to
the charge.  We overrule the issue as to
HP.

          Question 14, however, is predicated on
two jury findings against Travis individually that, as discussed above, are not
supported by the evidence.  Question 14
states:

You found that
Travis Hazlewood engaged in certain conduct in your answers to Questions 2, 4,
and 5.

 

Did Travis
Hazlewood engage in any such conduct with malice?

 

The same
conduct—Travis’s participation in concealing the full amount of the settlement
from the investors—was the basis for all three jury findings in Questions 2, 4,
and 5.  The jury’s answers to Questions 2
and 5, establishing Travis’s individual liability for breach of fiduciary duty
and fraud respectively, are not supported by the evidence and therefore cannot
support exemplary damages against Travis individually.  Question 4 is based on Kinzbach Tool, which held that where a third party knowingly
participates in the breach of a fiduciary duty he may become liable as a joint
tortfeasor with the fiduciary.  Kinzbach Tool Co. v. Corbett-Wallace Corp.,
138 Tex. 565, 574, 160
S.W.2d 509, 514 (1942).  Exemplary
damages may be imposed upon a finding that such conduct was engaged in with
malice.  See Taiwan Shrimp Farm Village Ass’n v. U.S.A. Shrimp Farm Dev., 915 S.W.2d
61, 73 (Tex. App.—Corpus Christi 1996, writ denied).  The evidence is legally and factually
sufficient to support the jury’s finding that Travis participated in HP’s
breach of fiduciary duty with malice. 
Travis intended to conceal the full amount of the settlement, keep the
$192,796 for HP, and not pay it to the investors.  The evidence is sufficient to support a
finding that Travis specifically intended to cause the Plaintiffs substantial
injury.  We overrule the issue as to
Travis.

Excessive Exemplary Damages

          HP’s and Travis’s tenth and eleventh issues
argue that the jury’s exemplary-damages award was excessive under Texas law and the due
process clauses of the United States and Texas constitutions.

          Under Texas law, exemplary
damages must be reasonably proportioned to actual damages.  Alamo Nat’l Bank v. Kraus, 616 S.W.2d
908, 910 (Tex. 1981).  No set rule or ratio exists to make the
determination; it depends on the facts of each particular case.  Id.  The amount of an award of punitive damages
rests largely in the discretion of the jury. 
United States Sporting Products,
Inc. v. Johnny Stewart Game Calls, Inc., 865 S.W.2d 214, 223 (Tex. App.—Waco
1993, writ denied).  Factors to consider
in determining whether an award of punitive damages is excessive include: (1)
the nature of the wrong, (2) the character of the offending conduct, (3) the
degree of culpability of the person against whom the damages were awarded, (4)
the relative situation and sensibilities of the parties, (5) the extent to
which the conduct offends a public sense of justice and propriety, and (6) the
net worth of the defendant.  Alamo Nat’l Bank, 616 S.W.2d at 910.  The jury found that HP committed fraud and
breached its fiduciary duty with malice. 
The jury also found that Travis knowingly participated in HP’s breach
with malice.  The jury could have chosen
to disbelieve Travis’s testimony that he acted upon Sparks’ advice.  The jury could have believed Mike Hancock’s
testimony that he requested to be at the mediation but Travis would not let him
come.  It is uncontroverted that the full
amount of the settlement was kept secret until this litigation was brought.

          The jury awarded $192,796 in actual
damages, which the trial court reduced to $83,470.  As a result, the ratio of exemplary damages
to actual damages for each defendant is $192,796 to $83,470, or roughly 2.3 to
1.  We do not believe that the award is
unreasonably proportioned to the actual damages.  See Alamo Nat’l Bank, 616 S.W.2d at 910.  We overrule this issue.

          The United States Constitution
prohibits a State from imposing “grossly excessive” punishments on a tortfeasor.  BMW of
North America, Inc. v. Gore, 517 U.S. 559, 562, 116
S.Ct. 1589, 1592, 134 L.Ed.2d 809 (1996). 
The U.S. Supreme Court has identified three “guideposts” for deciding
whether a punitive damage award is constitutional:  (1) the degree of reprehensibility of the
conduct; (2) the disparity between the harm or potential harm suffered and the
punitive damage award; and (3) the difference between this remedy and the civil
penalties authorized or imposed in comparable cases.  Id. at 574-75.  As stated above, the jury found that HP
breached its fiduciary duty with specific intent to harm the plaintiffs and
that Travis knowingly and maliciously participated in that breach.  They also found that HP committed fraud.  The award of exemplary damages was not
unreasonably proportioned to the actual damages.  Nor is the award out of line with awards in
similar cases.  E.g., Konkel v. Otwell, 65 S.W.3d 183, 185 (Tex. App.—Eastland
2001, no pet.) (upholding actual damages of $258,400 and $775,200 in exemplary
damages for breach of fiduciary duty); Apache
Corp. v. Moore, 960 S.W.2d 746, 749 (Tex. App.—Amarillo 1997, writ denied)
(4 to 1 ratio in case involving property damage resulting from oil well
blowout); Cantu v. Butron, 921 S.W.2d
344, 352-53 (Tex. App.—Corpus Christi 1996, writ denied) (5 to 1 ratio upheld
in case of breach of fiduciary duty and attorney’s fees).  See
also State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 425, 123
S.Ct. 1513, 1524, 155 L.Ed.2d 585 (2003) (Single-digit multipliers are more
likely to comport with due process than ratios of 500 or 145 to 1).  The exemplary damage award is not
unconstitutionally excessive.  We
overrule this issue.

Defendants’ Attorney’s Fees

          HP and Travis argue that if there is
no fraud or fiduciary duty, releases signed by the investors serve as a
complete bar to claims brought by the Plaintiffs, and HP and Travis would be
entitled to recover attorney’s fees. 
Because we will affirm the findings of fraud and fiduciary duty as to HP
and the finding of knowing participation as to Travis, we do not reach this
issue.

CONCLUSION

          We sustain the fourth issue as it
pertains to Travis’s individual liability for breach of fiduciary duty and
fraud.  Having overruled all of the other
issues, we affirm the judgment.

 

BILL VANCE

Justice

 

Before Chief
Justice Gray,

Justice Vance,
and

Justice Reyna

Affirmed

Opinion
delivered and filed December 15,
 2004

[CV06]











    [1]       In support of this proposition, HP and
Travis cite Johnston v. American Cometra,
Inc., 837 S.W.2d 711, 717 (Tex. App.—Austin 1992, writ denied), and Anderson v. Vinson Exploration, Inc.,
832 S.W.2d 657, 665 (Tex. App.—El Paso 1992, writ denied).